LOTTIE BANKS v. MORRIS & COMPANY, Appellant.

In Banc, January 4, 1924.

1. HUMANITARIAN RULE: Cause of Action: Pleading Obliviousness.
    The perilous situation of plaintiff and defendant's knowledge of

his peril are the ultimate and issuable facts, and the only facts that must be pleaded, under the humanitarian rule. Obliviousness is but a subsidiary or evidentiary fact, and has no place in the pleadings, and a petition for personal injuries, based on that rule, is not defective because it does not state that "plaintiff was ob-livious of her peril and that her obliviousness was apparent to the driver" of the automobile that struck her. [Disapproving in-consistent observations in Knapp v. Dunham, 195 S. W. (Mo. App.) 1062; Kinlen v. Railroad, 216 Mo. 1. c. 164; Pope v. Railroad, 242 Mo. 232; Rubick v. Sandler, 219 S. W. 401, and Stark v. Bing-ham, 223 S. W. 946, in so far as they hold that obliviousness must be alleged in pleading negligence under the humanitarian rule.]

2. ———: Constituent Elements: Obliviousness: Imminent Peril. The facts of a cause of action under the humanitarian rule are: (1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to be on the lookout, con-structive notice suffices); (3) defendant, after receiving said notice, had the present ability, with the means at hand, to have averted the impending injury to plaintiff without injury to him-self or others; (4) defendant failed to exercise ordinary care to avert such impending injury; and (5) by reason of such failure plaintiff was injured. In some situations plaintiff's peril is de-pendent upon his obliviousness of his danger, and in such situa-tions his obliviousness should be proved, not only for the purpose of showing he was in a position of peril, but to bring home to de-fendant knowledge thereof; but still obliviousness is an eviden-tiary and subsidiary fact.

Held, by WHITE, J., concurring, first, that the general rule that "regardless of what occasions the peril, the law makes it the duty of one who sees another in peril to exercise ordinary care to prevent death or injury" should not apply to persons who voluntarily seek injury; and, second, that the expression "imminent peril" means peril immediately impending, and not remote, uncertain or (for the person in danger) avoidable danger.

3. ———: Pedestrian: Automobile: Peril: Sufficient Evidence. A pedestrian has as much right to use a public street at a cross-ing as does the driver of an automobile; and if she enters upon it a sufficient length of time in advance of the coming of the auto-mobile to entitle her to the right of way, and when she reaches the center of the street her further progress is barred by the traffic in the opposite direction, her peril is created by defendant's machine bearing directly down upon her without any apparent reduction in its speed; and if, while it is still within twenty or twenty-five feet of her and still coming without any reduction in its speed, she

tries to extricate herself by returning to the curb she has just left, and is struck by the automobile, defendant is liable for her personal injuries under the humanitarian rule. And her right to recover in such situation is not destroyed by testimony of the driver that she was not in peril until she turned and ran back in front of defendant's truck, and that he was then fifteen feet away from her, and then applied the emergency brake and the car after skidding seven or eight feet came to a stop, where there is expert testimony that the car could readily have been stopped within seven or eight feet; for still, though defendant's view as to when her position of peril developed be accepted, the evidence warrants a jury in finding that defendant had ample time thereafter by the exercise of ordinary care to have avoided striking her.

4. **INSTRUCTION**: Excessive Damages: Cured by Remittitur. The petition alleged that plaintiff had incurred expenses for medical attention in the sum of $800, and the instruction authorized the jury to allow her $900 on that account; the petition placed her loss of earnings at $900, and the instruction placed no limit to the amount except $30 per week. There being 49 weeks between the injury and trial, the jury could have allowed her $1470 on account of loss of earnings. *Held*, that these errors can be cured by a *remittitur* of $670.

5. ———: Duplication of Damages: Physical Disability. The instruction told the jury to assess plaintiff's damages at such sum as will compensate her: first, for pain of body and anguish of mind, which she has suffered and is reasonably certain to suffer in the future, by reason of her injuries; third, for loss of earnings of her labor, which she has suffered and will suffer in the future, by reason of her injuries and directly caused thereby; fourth, "for permanent physical disability" which she has suffered by reason of her injuries and directly caused thereby. *Held*, that the words "permanent physical disability" in the fourth paragraph carry with them implications of future pain and suffering and future loss of earning power, both of which are covered by the first and third paragraphs; but the meaning conveyed by the words "physical disability" is the impairment of any of the normal functions of the body, and as the evidence tended to show that her right leg was shortened and the small bone thereof incurably fractured, and such impairment might or might not cause future pain, and might or might not cause a diminution of her earning power, it must be assumed that no jury of ordinary intelligence and fairness, after assessing, under the first and third paragraphs, amounts for future pain and loss of earnings, would make additional awards on those same grounds when they came to consider her "permanent

physical disability" mentioned in the fourth paragraph; and while the instruction is not accurately drawn, it does not so authorize a duplication of elements of damages as to constitute reversible error.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED (*upon condition*).

*Leahy, Saunders & Walther* for appellant.

(1) "In order to make the defendant liable, notwithstanding contributory negligence of plaintiff, the defendant must not only be aware of the danger in time to avert it, but must also know, or have reason to believe, that the plaintiff is oblivious of the danger and is in a position where he cannot extricate himself from it." This is the rule in Missouri. Degonia v. Railroad, 224 Mo. 564, 575, 586; Quigley v. Traction Co., 180 Mo. App. 287, 308; Waddell v. Railroad, 213 Mo. 8, 16; Dutcher v. Railroad, 241 Mo. 137, 165. It is also the rule in nearly all of the other states. Wallis v. So. Pac. Railroad Co., 195 Pac. (Cal.) 480; Arnold v. Railroad, 175 Cal. 1; 20 R. C. L. sec. 117, p. 143; Herrick v. Water Power Co., 75 Wash. 149, 156. (2) The facts to support the doctrine of last chance must be pleaded. Quigley v. Traction Co., 180 Mo. App. 308; Degonia v. Railroad, 224 Mo. 586, 595; 8 Thompson on Negligence, sec. 7466; Sutherland on Code Pleading Practice, sec. 4177; Cummings v. Railroad Co., 26 Mont. 434; Kennon v. Gilmer, 4 Mont. 433; Beach on Contributory Negligence, sec. 32, p. 41, note. (3) The element of obliviousness is essential to the establishment of a case under the clear last-chance doctrine, in the circumstances pleaded in the case at bar, and pleading obliviousness is not the negativing of contributory negligence on the part of the plaintiff, but the statement of one of the facts out of

302 Mo. Sup.—17.

which the negligence of the defendant arises. Without such an allegation the petition does not show that there was any duty upon the defendant which the defendant omitted to perform. Stated in another way, the petition without this essential allegation shows that the proximate cause of the injury. was the negligence of the plaintiff instead of the defendant. Sutherland on Code Pleading Practice, secs. 4173, 4177; Beach on Contributory Negligence, secs. 32, 35, and note, p. 41. (4) It is the antecedent negligence of the plaintiff upon which the humanitarian rule is predicated. Clark v. St. Joseph Terminal Railroad Co., 242 Mo. 520, 609. But, when circumstances are present which give rise to a duty upon the defendant to avoid injuring the plaintiff, notwithstanding the latter's own negligence, there can be no such thing as contributory negligence as against the defendant's duty arising out of the situation in which the plaintiff's own negligence has placed him. So the courts say that "contributory negligence is not a defense to a cause founded on the last-chance rule." Borders v. Street Railway, 168 Mo. App. 172, 176; Grout v. Central Railroad Co., 125 Mo. App. 552; Bonsall v. Railroad, 152 Iowa, 579; Smith v. Herbel, 157 Mo. App. 177. (5) The result in the case of Karte v. Brockman Manufacturing Company, 247 S. W. 417, is not dependent upon the remarks of the court regarding the necessity for pleading that the plaintiff's deceased husband was oblivious to the approaching danger. The decision can rest solely upon the other ground advanced in the opinion that obliviousness was admitted as a fact in the trial court and the case tried below upon the theory that it was not an issue. It was upon this latter ground that the decision of this court rested in Simpson v. Wells, 237 S. W. 520.

*Edward W. Foristel* and *O. J. Mudd* for respondent.

(1) The petition contains allegations of all the necessary constitutive facts of a cause of action on negli-

gence, the "imminent danger" of the plaintiff, its discovery to the truck driver, his ability thereafter to stop and failure to do so, and proximate result of that failure in injury to the plaintiff. Secs. 1220, 1239, R. S. 1919; Phillips v. Railway Co., 226 S. W. 863; State ex rel. Vulgamott v. Trimble, 253 S. W. 1014; St. Louis & S. W. Ry. Co. v. Canbron, 188 S. W. (Tex.) 1130. (2) "A position of imminent danger" on the part of the plaintiff, when actually or constructively known to defendant, immediately casts upon the defendant the duty then to exercise ordinary care (proportional to the calls of that danger) to avoid injury to plaintiff; and a petition stating those facts, although alleging the "imminent danger" of plaintiff in those words only and without any direct allegation of obliviousness or consciousness and inability to extricate, is a sufficient statement of facts invoking the humanitarian doctrine as a bar to the defense of contributory negligence, and it has been consistently and uniformly so recognized, declared and applied by this court as the law of this State from its very first decision applying the doctrine. Isabel v. Railroad 60 Mo. 482; Harlan v. Railroad, 64 Mo. 483; Maher v. Railroad, 64 Mo. 267, 276; Zimmerman v. Railroad, 71 Mo. 476; Werner v. Railroad, 81 Mo. 374; Scoville v. Railroad, 81 Mo. 434; Donahoe v. Railway Co., 83 Mo. 545, 551; Bergman v. Railway Co., 88 Mo. 683; Rine v. Railroad, 88 Mo. 399; Guenther v. Railroad, 95 Mo. 286; Kellny v. Railroad, 101 Mo. 67; Hanlon v. Railroad, 104 Mo. 381; Guenther v. Railroad, 108 Mo. 18; Schlereth v. Railway Co., 115 Mo. 101; Moore v. Railroad, 126 Mo. 265; Lloyd v. Railroad, 128 Mo. 595; Schlereth v. Railroad, 128 Mo. 595; Chamberlain v. Railway Co., 133 Mo. 587; Morgan v. Wabash Railway Co., 159 Mo. 262; Klockenbrinck v. Railway Co., 172 Mo. 678; Riska v. Railroad, 180 Mo. 168; Holmes v. Mo. Pac. Ry. Co., 207 Mo. 149; Lange v. Railway Co., 208 Mo. 458, 477; Powell v. Railways Co., 226 S. W. 916; Murphy v. Railroad, 228 Mo. 56. (3) Even if either

obliviousness to her peril or inability to avoid it is essential to a recovery by the plaintiff, but neither is expressly alleged in the petition; yet, if the allegation that plaintiff was in a position of imminent danger, by inference or intendment, implies the one or the other of these conditions as a cause or concomitant of the "imminent peril," then the allegation is sufficient against attack made for the first time after verdict and judgment, and the omission of a direct or express allegation of obliviousness is not fatal. Shaber v. Van Wormer, 33 Mo. 386; Bank v. Scalzo, 127 Mo. 188; Robinson v. Levy, 217 Mo. 498, 517. (4) But plaintiff in her petition confined her allegations to a statement of facts and circumstances showing defendant's negligence and her injury as a proximate result thereof; and so she had no concern there with a charge of contributory negligence on her part (which could come into the case only on a plea of it in an answer), nor with any of its vital incidents, and was not called upon or required to plead it so as to avoid it or to anticipate it. Hall v. Coal & Coke Co., 260 Mo. 351, 367. (5) If obliviousness is considered as a shield against the operation of the relevant doctrine of the Kinlen Case, that one who consciously or voluntarily enters into danger cannot recover for the results of his act in doing so, it enters the case only as an avoidance of the defense of contributory negligence. But if considered as a cause or source of the danger, or as a means of its discovery, then, again, it is not necessary to allege it in the petition, or not reversible error to omit it from the petition, because the "imminent danger" alleged is the ultimate, the constitutive "foundation" fact of the humanitarian doctrine, and it is not required that plaintiff plead the conditions which gave rise to that imminent danger. See v. Cox, 16 Mo. 166; Railroad Co. v. Kenney, 41 Mo. 273; Alcorn v. Railroad, 108 Mo. 81; Gates v. Watson, 54 Mo. 590; Midway Trust Co. v. Davis, 288 Mo. 574. (6) If the petition contains allegations sufficient for a cause of action on negligence-

tort, the defendant by its answer traversed the allegations of the petition, without any challenge to its legal sufficiency as a statement of a cause of action; and then, if, at the trial, defendant thought that plaintiff was making a case on her proofs as on a different character of negligence than that stated in her petition, the defendant was bound then and there to proceed as for a variance between the pleadings and the proofs, as required by the statute. Failing to do so, defendant has waived its right to be heard here on such complaint. R. S. 1919, sec. 1272; Fischer v. Max, 49 Mo. 404; Wells v. Sharp, 57 Mo. 56; Shelton v. Durham, 76 Mo. 434, 437; Harrison v. Lakenan, 189 Mo. 599; Von Treba v. Gas Light Co., 209 Mo. 648, 660; Railroad v. Railroad, 222 Mo. 461, 486. (7) This court has never held that the absence of "obliviousness to the danger" in all cases necessarily defeats a recovery. (8) So far as the obliviousness of the plaintiff relates to the discovery of the peril, it is clearly matter of evidence, and efficiently predicated by the allegation of actual or constructive knowledge on the part of the truck driver. But, in any event, the need of an allegation of it is dispensed with here, because the truck driver was not affected by the state of mind, either of obliviousness or consciousness on the part of the plaintiff. He did not rely on her consciousness of her peril, or claim to have been in any manner affected by it. For this reason it became an immaterial element, and failure to submit it was, on the evidence, harmless. Bybee v. Dunham, 198 S. W. 193; Newton v. Harvey, 202 S. W. 251; Dunn v. Kansas City, 204 S. W. 594; Heryford v. Spitcaufsky, 200 S. W. 125; Lilly v. Railway Co., 209 S. W., 971. (9) The true meaning and legal significance of the socalled humanitarian or last chance doctrine is that it is an exception to or avoidance of the application and bar of the doctrine of contributory negligence as a defense to a negligence-tort action. Hanlon v. Railway Co., 104 Mo. 389; Morgan v. Wabash Railway Co., 159 Mo. 262; Kellny v. Railroad,

101 Mo. 67, 74; Murphy v. Railroad, 153 Mo. 262; Murphy v. Railroad, 228 Mo. 80; Hinzemann v. Railroad, 182 Mo. 611, 623; Degonia v. Railroad, 224 Mo. 564, 587; Kreymeyer v. Transit Co., 220 Mo. 684.

RAGLAND, J.—Action for damages for personal injuries. From a judgment for plaintiff in the sum of $10,000, defendant has appealed.

The petition alleged several grounds of negligence, but the case was submitted to the jury on only one of them. It was pleaded as follows:

"Fourth. That the defendant's agent and servant in charge of said automobile saw, or by the exercise of ordinary care could have seen, plaintiff in and upon the traveled part of said Pine Street and not upon the sidewalk, at its intersection with said Compton Avenue, and in a position of imminent peril of being struck by defendant's said automobile, in time thereafter, by the exercise of ordinary care, with the means at hand and with safety to defendant's said chauffeur and the other occupants of defendant's said automobile, to have stopped said automobile, slackened the speed of or turned same so as to have avoided striking plaintiff, but that the defendant's said chauffeur failed to do so."

The evidence for plaintiff tended to show the following facts:

Plaintiff is a negro woman, who at the time of her injury was living at 3218 Pine Street in St. Louis. She was a dressmaker, earning about thirty dollars per week. About the middle of the afternoon of January 3, 1920, she left her home to go to Olive and Jefferson Streets in said city. She went east on the south side of Pine to Compton Avenue, and then turned north on the west side of that street to board the street car at Olive, a block north. Pine Street at Compton is thirty-six feet wide from curb to curb. Plaintiff stepped off of the curb on the south side of Pine into that street and looked to the east and saw an automobile approaching Compton from that direction, on the north side of Pine.

She then looked to the west and saw defendant's truck, which afterward struck her, approaching Compton, but at that time about the middle of the block near where she resided—260 feet away. Plaintiff then proceeded northward in Pine Street along the west side of Compton; after she had gone ten or fifteen feet she discovered that the west-bound automobile was approaching too near for her to attempt to cross in front of it in safety, and she stopped. She then saw defendant's truck approaching from the west and that it would likely run over her unless she immediately got out of its way. She turned quickly and moved as rapidly as she could back toward the curb at the southwest corner of Pine and Compton, which she had just left. As she did so the truck swerved suddenly to the right (south), and she was struck by the right front portion, and knocked down and seriously injured. With respect to the situation as it appeared to her when she reached the point in the street where she stopped, plaintiff testified: "I didn't wait at all, I just hesitated a moment. I seen I couldn't get past the machine I was looking for going west, and this truck coming east was so near me that I attempted to get out of the road of that one and started back toward the curb, . . . It seemed that way to me, the truck was coming right into me. The truck seemed to be the same distance away from the curb I was. If it didn't seem that way to me I would have stood right there." She further testified that when she turned to run back to the curb defendant's truck was twenty or twenty-five feet away; that when she turned the driver seemed to lose control of the truck, so that the truck followed her and struck her within a foot or a foot and a half of the curb, on the south side of Pine and on the pedestrian crossing along the west side of Compton; that there was plenty of room for the driver of the truck to have swerved his truck slightly to the north and avoided striking her without colliding with traffic coming westward on the north side of Pine. After the

right front wheel had passed over plaintiff's right leg, the truck stopped.

The evidence on the part of defendant tended to show that when the truck reached a point about fifty feet west of the west curb on Compton, the driver saw plaintiff step off the curb and start diagonally toward the northeast corner of the street intersection; that when she reached the center of the intersection she was stopped by the west-bound traffic, and thereafter suddenly wheeled around and left a place of safety and started back directly in the path of the truck; that the driver swerved his truck to the south to avoid striking her, but that she moved so suddenly that it was impossible to avoid striking her. The driver testified that his truck was moving at the rate of eight miles an hour when he first saw plaintiff leave the curb; that he then sounded his horn and applied the service brake, without cutting off the power, which reduced his speed to six miles an hour; that plaintiff turned to go back to the curb when he was within fifteen feet of her; that he then applied the emergency brake, and swerved to the south, because he could not turn to the north without colliding with the west-bound traffic; that after putting on the emergency brake the car skidded seven or eight feet and came to a stop over plaintiff after the right front wheel had knocked her down and passed over her leg.

There was a slight up-grade going east on Pine Street, and the surface of the street was icy. But a witness for plaintiff, who qualified as an expert, gave it as his opinion that the truck, under the conditions obtaining immediately prior to its collision with plaintiff and with the means at hand, could readily have been stopped within seven or eight feet.

With respect to the injuries sustained by plaintiff as a result of her collision with the truck, her evidence tended to show: There was a complete fracture of both bones of her right leg two or three inches above the ankle joint. Several attempts were made to reduce the

fractures by means of splints and bandages; these all
failed by reason of the slipping and over-lapping of the
segments of the tibia after they were put in proper po-
sition for union. Finally after there had been a par-
tial union it was deemed necessary to remove the cal-
lous or bone cement that had formed, re-adjust the
broken parts and put on a steel plate to hold them in
place. This final operation was successful and a satis-
factory union of the broken parts of the tibia resulted.
There has been no union of the parts of the fibula, and
never will be. The net result is: the leg will be as strong
as before the injury, but one and three-fourths inches
shorter, causing a tilting of the pelvis, which has the
effect of throwing the spine and upper organs out of
line and which may possibly cause curvature of the
spine. The failure of the fibula to function has destroyed
the rotary motion of the leg at the knee. These condi-
tions are permanent.

Plaintiff also suffered a sprain or a loosening of a
cartilaginous union between the back bone and one of
the large bones of the hip, which her physician called
"the illosacral joint." This hurt, he said, was incurable,
and would probably give rise to various nervous dis-
orders. She was confined to her bed for about six
months, and down to the time of the trial, eleven months
after the injury, she had continuously suffered from
sleeplessness and protracted headaches.

The court refused a peremptory instruction in the
nature of a demurrer to the evidence at the close of
plaintiff's case in chief, and again when all the evidence
was in. Plaintiff's principal instruction followed sub-
stantially the language of her pleading heretofore set out.
The instruction on the measure of damages given at her
instance was as follows:

"The court instructs the jury, that if you find in
favor of the plaintiff you will assess her damages at
such sum as you may believe and find from the evidence
will be fair compensation to her:

"First. For pain of body, if any, and anguish of mind, if any, which the plaintiff has suffered by reason of her injuries, if any, and directly caused thereby; and for pain of body, if any, and anguish of mind, if any, which the jury find from the evidence plaintiff is reasonably certain to suffer in the future, by reason of her injuries, if any, and directly caused thereby.

"Second. For expense, to the reasonable value thereof, and not exceeding $900 for medical attention, if any, the plaintiff has necessarily incurred and become obligated for, by reason of her injuries, if any, and directly caused thereby.

"Third. For loss of earnings of her labor, if any, but not exceeding the rate of $30 per week, which the plaintiff has suffered, by reason of her injuries, if any, and directly caused thereby; and for loss of earnings of her labor in the future, if any, which the jury find from the evidence she is reasonably certain to suffer by reason of her injuries, if any, and directly caused thereby.

"Fourth. For permanent physical disability, if any, which the plaintiff has suffered by reason of her injuries, if any, and directly caused thereby."

I. One of the grounds on which appellant based its request for a directed verdict was the alleged insufficiency of the petition. Appellant argues here that the petition does not state a cause of action because it does not allege "that plaintiff was oblivious of her peril and that it (her obliviousness) was apparent to defendant's chauffeur." This calls for a brief consideration of the "humanitarian rule," as applied in this State. The doctrine from which the rule has been evolved is something more than an exception to the law of contributory negligence. It "proceeds upon the precepts of humanity and of natural justice to the end that every person shall exercise ordinary care for the preservation of another after seeing him in peril or about to became imperiled, when such injury may be averted

*Pleading:*
*Humanitarian*
*Rule: Obliviousness.*

without injury to others." [Dey v. Railways, 140 Mo. App. 461, 467.] Under this doctrine "the position of peril" is one of the basic facts of liability; it might be denominated the chief one. [State v. Trimble, 253 S. W. 1014, 1019.] It is of no consequence what brings about, or continues, the situation of peril. It may be through the obliviousness of the one imperiled, or through his inability to extricate himself from his environment, or through his efforts to rescue another, or through his sheer hardihood or recklessness. But regardless of what occasions his peril, the law out of its extreme regard for human life makes it the duty of another who sees him in peril to exercise ordinary care to prevent injury or death. [Murphy v. Railroad, 228 Mo. 56; Morgan v. Railroad, 159 Mo. 262; Hanlon v. Railroad, 104 Mo. 388.] The constitutive facts of a cause of action under the humanitarian rule, stated in their simplest terms, without any of the refinements, limitations or exceptions which might arise on a particular state of facts, are contained in this formula: "(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured." Evidence tending to prove these facts makes a prima-facie case for plaintiff. In some instances obliviousness of danger on the part of the plaintiff is necessary to make the situation in which he is placed one of peril. In such cases it is of course incumbent upon the plaintiff to make proof of the facts and circumstances tending to show obliviousness, not only for the purpose of establishing that he was in a position of peril, but to bring home to defendant a knowledge of his peril. In these cases, however, obliviousness is but a subsidiary or evidentiary fact, the

perilous situation of plaintiff and defendant's knowledge of it are the ultimate, issuable facts. Such facts and only such facts must be pleaded. Matters of evidence have no place in a pleading. This is elementary law. A merely casual reading of the petition in this case discloses that it states fully and succinctly all the facts necessary to constitute a cause of action under the humanitarian rule.

In passing it should be said that this is the first time this court has had occasion to rule on the question of whether it is necessary to plead "obliviousness" under the humanitarian rule. We have held that under an unchallenged plea of general negligence proof could be made of negligence under the humanitarian doctrine. [Frankel v. Hudson, 271 Mo. 495, 504; Fleming v. Railroad, 263 Mo. 188, 189; Kellny v. Railroad, 101 Mo. 75; Hilz v. Railroad, 101 Mo. 56; Hanlon v. Railroad, 104 Mo. 381.] But in the cases that have been before us where, as here, negligence under that rule was specifically pleaded, the question of the necessity of alleging obliviousnss has not arisen. Notwithstanding, appellant in support of its contention that obliviousness must be pleaded cites Kinlen v. Railroad, 216 Mo. 145; Pope v. Railroad, 242 Mo. 232; Lackey v. United Railways Co., 231 S. W. 956; State v. Reynolds, 233 S. W. 222. In none of those cases, however, was there any question of pleading considered. So far as the humanitarian rule was involved, they dealt for the most part with questions touching the sufficiency of proof that plaintiff was in a position of imminent peril—*through obliviousness*—and that defendant had actual or constructive knowledge of it. The first specific ruling in this State that obliviousness must be pleaded was made by the Kansas City Court of Appeals in Knapp v. Dunham, 195 S. W. 1062. The holding in that case was based upon some observations made in Kinlen v. Railroad and in Pope v. Railroad, supra. In the Kinlen Case the language used (pp. 164 and 165) was perhaps somewhat broader

X

than was necessary to a disposition of the question then under consideration. In any event, if what was there said be deemed inconsistent with the views herein expressed, it should to that extent be no longer followed. Knapp v. Dunham, supra, Rubick v. Sandler, 219 S. W. 401, and Stark v. Bingham, 223 S. W. 946, in so far as they hold-that obliviousness must be alleged in pleading negligence under the humanitarian rule, are disapproved.

II. It is next urged that the proof was not sufficient to take the case to the jury. Viewed from the standpoint of plaintiff's evidence, she did not place herself in a position of peril when she left the south curb of

**Sufficient Proof.** Pine Street and started to walk north across the street. She as a pedestrian had as much right to use the street for travel as had the defendant with its motor vehicle. She entered upon that particular portion of the street a sufficient length of time in advance of the coming of defendant to entitle her as against it to the right of way. Her situation did not become dangerous until she reached the center of the street where her further progress was barred by the west-bound traffic. She would have been in no danger then if the truck had not borne directly down upon her without any apparent reduction of its speed. She was not oblivious to the menace of the on-coming truck; on the contrary, she was keenly alive to it. When it was within twenty or twenty-five feet of her, and still coming, she tried to get out of its path. As she could not go forward, she attempted to run back. The driver of the truck had notice of plaintiff's situation in ample time to have stopped before she became imperiled. In fact the peril was solely of his creation; he saw that the traffic conditions were such that plaintiff could not continue across the street, yet he came directly on, neither slowing down, nor turning to right or left. Apparently he was not concerned with the peril he was putting her in; he left it to her to extricate herself as best she could —to take wing if necessary to get out of *his road.*

According to the driver and some others of defendant's witnesses, plaintiff was not in a position of peril until she turned and ran back in front of the truck. But the driver testified that he was then fifteen feet away from her; that he applied his emergency brake, and the car after skidding seven or eight feet came to a stop. The testimony of the expert was that the car could readily have been stopped within seven or eight feet. So that if defendant's view as to when the position of peril developed be accepted, still the evidence was such as to warrant the jury in finding that the defendant had time thereafter by the exercise of ordinary care to have avoided striking plaintiff. There was ample evidence to support the verdict.

III.   Complaint is made with reference to the instruction on the measure of damages. The petition alleged that plaintiff had incurred expenses for medical attention in the sum of $800, while the instruction authorized the jury to allow her $900 on that account, an excess of $100. The petition further placed lost earnings at $900, whereas the instruction contained no limitation as to the amount except with respect to the rate, which it fixed at $30 a week. Between the date of the injury and the date of the trial forty-nine weks had elapsed. The jury therefore could have allowed $1470 on account of this item of damages or $570 more than was claimed in the petition. These errors can be cured by a *remittitur* of $670.

**Excessive Damages.**

The instruction is further criticised on the ground that it authorized a duplication of the elements of damages. Viewed from the standpoint of compensation the phrase, "permanent physical disability," as used in the fourth paragraph of the instruction, unquestionably carries with it implications of future pain and suffering and future loss of earning power, both of which are covered by the first and third paragraphs. The meaning directly conveyed by the words, physical disability, however, is the impairment of any of the normal functions of the body.

**Duplication of Damages.**

Banks v. Morris & Company.

In the instant case the evidence tended to show that plaintiff's right leg was shortened and the small bone therein incurably fractured, by reason of which the normal function of the leg was permanently impaired. Such impairment might or might not cause future pain, it might or might not cause a diminution of earning power; but wholly independent of these possible consequences it was an element which it was proper for the jury to consider in fixing plaintiff's compensation. If the jury was possessed of ordinary intelligence and a sense of fairness, as we must assume, it is hardly conceivable that after assessing, under the first and third paragraphs of the instruction, amounts to be allowed for future pain and suffering and for loss of earning power, they would make additional awards on these same grounds when they came to consider plaintiff's permanent physical disability. The instruction was not accurately drawn, but it cannot reasonably be held to have led the jury into error. [Reynolds v. Transit Co., 189 Mo. 408, 419; Hite v. Railroad Co., 225 S. W. 916, 921.]

IV. Complaint is also made as to the amount of damages awarded by the jury. The facts which the evidence tended to show with reference to plaintiff's injury have been fully summarized and need not **Excessive Verdict.** be repeated. In view of them we are unable to say that the verdict is excessive.

Other questions of minor import were raised, and have been duly considered. Outside of the failure of the instruction on the measure of damages to limit the recovery for medical attention and for lost earnings, respectively, to the amounts claimed therefor in the petition, the record discloses no reversible error. The judgment will therefore be affirmed, if appellant will within ten days remit $670 of her award, as of the date of the judgment; otherwise the judgment will be reversed and the cause remanded for another trial.

All concur, *White* and *David E. Blair, JJ.,* in separate opinion.

WHITE, J., (concurring).—I fully concur in all that is said by RAGLAND, J., in the leading opinion, and inasmuch as it overrules several decisions of the Courts of Appeals and for the first time unequivocally states the doctrine announced, I think it is important to anticipate an objection which would occur to some, or, rather, to state a qualification of the rule which would more clearly determine its limits.

*Obliviousness: Qualification of Rule.*

No doubt, in alleging a cause of action under the humanitarian rule, so far as the person injured is concerned, it is sufficient to allege that such person was in *imminent peril*. The cause of the peril and the circumstances conducing to it and attending it are matters of evidence bearing upon the ultimate fact and need not be pleaded. This is clearly stated in the opinion. It is properly said: "Regardless of what occasions his peril, the law . . . makes it the duty of another who sees him in peril to exercise ordinary care to prevent injury or death." That broad statement would include a case where one voluntarily seeks an injury. Cases arise where persons attempt to commit suicide, or try to be injured in order to collect insurance money or recover damages. In such cases the humanitarian duty is the same as in others, yet such persons cannot recover, not because the demands of humanity are any less compelling, but because the party injured has forfeited the right to complain of the want of care in one who injures him. The maxim *"volenti non fit injuria"* applies. It would not be necessary to negative a situation like that in stating a cause of action. That would be an affirmative defense to be alleged and proved, just as contributory negligence, in a proper case, is necessary to be alleged and proved. One may expose himself to peril, recklessly, without rational consideration of the result, and expect to escape injury. That is a species of negligence, and is clearly to be distinguished from a case where one intentionally courts an injury.

II.  I think also that the appellant in this case has failed to appreciate the significance of the expression ''imminent peril.''  That does not mean remote, uncertain, contingent, nor (for the person affected) avoidable danger.  It is imminent, *immediately* impending; it admits of no time for deliberation on the part of the person in peril between its appearance and the impending calamity.  A person in full possession of his faculties, standing on a railroad track with a train approaching two hundred yards away and due to arrive in ten seconds would not appear in iminent peril, because in the natural course of things such person would be expected to step off before he could be injured.  The peril would be imminent only when the ordinary and natural effort to be expected in such person would not put him in a place of safety.

**Imminent Peril.**

These are suggestions which I believe should accompany the elucidation of the subject.

Headnotes 1 and 3:  **Motor Vehicles,** 28 Cyc. 45, 37;  Headnote 2: **Negligence,** 29 Cyc, 530;  Headnote 4:  **Appeal and Error,** 4 C. J. sec. 3150;  Headnote 5:  **Damages,** 17 C. J. sec. 375.