E. G. FAVORITE, ADM., ETC., RESPONDENT, v. FRANK BETHEL, APPELLANT.—55 S. W. (2d) 702.

Kansas City Court of Appeals. December 12, 1932.

*Nick M. Bradley* and *Roy A. Jones* for respondent.

*J. R. Rothwell* and *W. E. Suddath* for appellant.

ARNOLD, J.—This is an action in damages for personal injury resulting in death.

Plaintiff, as the duly qualified and acting administrator of the estate of James Pollock, whose death is alleged to have been caused by the negligence of defendant, brought this suit. Defendant was the owner of certain automobile freight trucks for the operation of which he employed drivers. The suit originated and was tried in the circuit court of Johnson County, Missouri. There was a verdict and judgment for plaintiff in the sum of $1250. Motions for a new trial and in arrest were ineffectual, and defendant has appealed.

The amended petition alleges James Pollock died, intestate, and that plaintiff, on February 23, 1931, was duly appointed and qualified as administrator of his estate; that said James Pollock was an adult at the time of his death and that he died leaving neither wife nor any natural born or adopted children. It is alleged that on November 12, 1930, at about four P. M., deceased was a passenger in an automobile owned by his son and being operated at the time by his said son, on U. S. Highway No. 50, in a portion of said highway lying within the east corporate limits of the City of Warrensburg in Johnson County, Missouri, when, at said time and place the defendant, his servant, agent or employee, in the scope of his employment, carelessly and negligently operated an automobile truck, a motor vehicle, east on said highway, so as to cause said truck carelessly, negligently and violently and forcibly to strike, run into, upon and against the automobile in which deceased was a passenger; that said servant of defendant, on approaching said point of collision, carelessly and negligently failed and neglected to keep a reasonably careful and vigilant lookout ahead; carelessly and negligently operated said truck at a high and dangerous rate of speed, to-wit, in excess of forty miles per hour; failed and neglected to give sufficient warning of the approach of the said truck; failed to keep said truck to the right of the center line of said highway, and drove said truck to the left of the center line of said highway; failed to exercise the highest degree of care in the operation of said motor vehicle; that the same was not equipped with good and sufficient brakes, in good working order, as required by law, and failed and neglected to use the kind of brakes with which said truck was equipped at the time of the collision; that, as said truck approached the point of collision, deceased was in imminent danger, and that

said defendant, his servant, agent or. employee "saw, or in the exercise of due care could have seen the deceased in a position of peril in time thereafter to use due care and means at hand and with safety to said automobile truck and to the driver and occupants thereof, to have stopped said truck, or to have slackened the speed thereof, or to have given warning of its approach, all in time by the exercise of due care to have avoided striking the car in which deceased was a passenger," but carelessly and negligently failed to use the means at hand to avoid said collision, and that said failure of defendant was the direct cause of the collision.

The petition also pleads Section 489, Chapter 14, Article 1, of the revised ordinances of the City of Warrensburg, limiting the speed of motor vehicles upon any street, avenue, highway or alley of said city to a rate not to exceed fifteen miles per hour in the business district, and twenty-five miles per hour in the residence district; that defendant, his servant, agent or employee, negligently drove said automobile truck, within the residence district of said city at a rate of speed in excess of twenty-five miles per hour; that by reason of said collision, decedent James Pollock, was thrown from said automobile, his body bruised and torn, his bones broken so that he suffered for two days thereafter and on the 14th day of November, 1930, died as a direct result of said collision and the carelessness and negligence of defendant; that prior to said accident and death, decedent was a strong, able-bodied man, the head of a family and sole support of four unmarried daughters and two sons, all adults; that said heirs were deprived of his support and assistance; that they have expended large sums of money for hospital and doctors' bills, funeral and burial expenses. Judgment is asked in the sum of $10,000.

The answer is a general denial, and, as affirmative defense, pleads contributory negligence, as follows:

"That he (decedent) failed to be observant of his surroundings and what he was doing, and negligently failed to observe the physical facts and physical conditions thereat and thereabout, and negligently failed to use his ordinary sense of sight and observation, and failed to use the usual and ordinary care that a reasonably prudent person would use under like or similar circumstances for his own protection and preservation and negligently, heedlessly and needlessly exposed himself to danger and that but by aforesaid acts of contributory negligence and omissions upon the part of the said James Pollock, he would not and could not have been injured."

The reply was a general denial. Upon the pleadings thus made, the cause was tried to the court and jury, resulting in a verdict and judgment as above indicated.

The facts of record disclose that U. S. Highway No. 50 runs generally east and west across the State of Missouri, and is intersected

in the northeast part of the City of Warrensburg by State Highway No. 13, at right angles. At this intersection is a filling station known as Tip Top station. The highway (No. 50) from this station eastward is slightly down-grade for about one-eighth of a mile, thence slightly up-grade for a somewhat lesser distance, and from there down-grade for almost a quarter of a mile, thence up-grade again. A little in excess of three-eighths of a mile east of said filling station and on the north side of Highway No. 50 is a dwelling house known as the Courtney Keith home. There is a driveway from the paved portion of the highway up into the Keith place. This driveway is some eight to ten feet wide with a wing on each side where the driveway connects with the paved portion of the highway. These wings make the entrance to the driveway about twenty-seven feet in width where it touches the highway pavement, and within eight or ten feet back, it is narrowed to a width of about ten feet. This driveway is approximately half way down the second incline in the highway going east. Highway No. 50, at this point, is composed of a cement slab eighteen feet in width, with a dark center line running east and west dividing the surface into two segments each nine feet in width. There are also unpaved shoulders five or six feet in width flanking the eighteen foot slab.

On the day in question Orville Pollock and his father (decedent), had driven east on Highway No. 50, and had parked their car on the south shoulder of the paved portion of the highway, headed east, and somewhat east of the east line of the Keith driveway. They had gone into an adjacent field on the south side of the highway to look for some repair piece in a junk pile for the car belonging to Orville. On their return to the car, Orville went to the north side of the car which stood parked as stated, his father remaining on the south side thereof. Orville then got into the car and started the engine, asking his father if any car was coming; the father replied that the way was clear. Orville testified that after his father got into the car, he backed the car westward five or six feet along the dirt shoulder, and before actually driving on the pavement, he looked back to the west and saw no car coming; that he kept on slowly backing, with the intention of backing up into the Keith driveway; that he saw no car approaching after he got into his car; that he gave no signal indicating his intention to back the car, or that he was going to cross the highway, either forward or backward. Plaintiff's testimony further shows the Dodge car was struck by the truck on the north side of the center line of the highway and while its rear wheels were in the Keith driveway and the front wheels from eighteen to thirty inches north of the center line of the pavement; that the Dodge car was struck at its right front wheel which was demolished, as was also the radiator. Evidence on behalf of plaintiff showed there were skid marks made by the tires of the Dodge car,

some being inside the entrance to the Keith driveway and others north of the center line of the pavement.

At this point, there is a sharp conflict in the testimony. That in behalf of defendant was to the effect the Dodge car was struck at its rear right wheel and thrown around, and the stock-rack on the truck which stood about seven feet above the pavement struck the Dodge car a second time. It is on this difference in the testimony that much of the argument is based. The testimony shows decedent was thrown from the Dodge car to the pavement, rendered unconscious and taken to a hospital in Warrensburg and, later, to a hospital in Kansas City, where he died two days later.

Orville Pollock, testifying for plaintiff, stated that while his car stood on the south shoulder of the concrete slab, he heard no signal horn or other warning. Another truck which other testimony shows belonged to defendant passed going east. Seeing no other car coming, Orville testified he backed across the pavement, with the resulting collision.

A. G. Taubert, editor and publisher of the Warrenburg Standard-Herald, testified he went to the scene of the accident the same day and, on examination, found the Dodge car was struck near the Keith driveway on the north side of the center line of the pavement; that he saw skid marks on the pavement on the north side of the center line of the slab which were from eighteen to twenty-four, or possibly thirty inches north of the center line of the slab, and there were no marks on the south side of that line.

Ross Farley, a garage mechanic, plaintiff's witness, testified he went to the scene of the accident to pick up the Pollock car and observed it had a "busted" front wheel and the front all mashed up. His opinion, from observation, was that both front and rear wheels had been struck.

E. A. Pollock, Orville's cousin, testified he examined the scene of the accident and found the right front wheel of the Dodge car broken down and the skid marks about eighteen inches north of the center line of the pavement.

The testimony is uncontradicted that the alleged offending truck was loaded with cattle, the truck and cattle weighing about 15,000 pounds; that it had hydraulic brakes, the flow-line of which was broken and disconnected by the collision, and that the emergency brake was not sufficient to stop the truck until it reached a point 200 feet east of the scene of the accident, where it ran off the north shoulder of the slab and stopped in a ditch about four feet deep, but did not turn over. It is defendant's contention the Dodge car was blocking the pavement at the time it was struck, instead of being on the north side thereof, as contended by plaintiff.

Defendant Bethel testified his men were hauling two loads of cattle on the day in question, and that one of his trucks preceded the one

involved in this accident; that the truck ahead had a governor which controlled its speed to twenty-eight miles per hour, but that the truck in question was not so equipped but had hydraulic brakes which were in good order.

Ray Suddarth, driver of the alleged offending truck, testified that both trucks belonged to defendant; that the other truck preceded him after they had stopped at the Tip Top station; that when he had come to the top of the hill which is shown to have been about 750 feet west of the scene of the collision, he saw the truck ahead pass the Pollock car; that he saw both men get in the car and saw it back up along the shoulder off the slab; that when they began backing, he commenced to pull over to the left side of the slab to go around them, but the Pollock car backed out on the slab in front of him; that he sounded his horn after he came over the hill in sight of them; that the Pollock car was just about straddle the black (center) line when he hit it, and that he did not have room to pass the Pollock car on his right.

On cross examination, this witness said that at the time he sounded his horn the men in the Dodge car were about 750 feet away, and that he blew his horn at about the time they got in the car, and that was about the time the truck ahead of him passed them; that he did not sound the horn again; that he had not room to go to the right; that if the Dodge car had been on the north side of the pavement, he could have gone around it; that when he hit the car it was straddling the black (center) line and right in the middle of the road.

D. W. Frazier, a school teacher, testified for defendant that he was living at the Keith place at the time the accident occurred; that he saw the Pollock car parked at the side of the road; did not see the truck which preceded the one involved in the accident; that the point of contact between the second truck and the Dodge car was the right rear wheel of the Dodge. He was asked: "Can you tell where that wheel was with reference to the center of the pavement?" and his reply was, "I think it was pretty close to the north edge of the pavement." He said he noticed the "burns" (skid marks) in the driveway and also saw other tire "burns" near the center of the road. This witness stated that in addition to the tire marks in the driveway, there were marks just north of the black line commencing about the center (east and west) of the Keith driveway, and that the same were made by different wheels, those in the driveway by the rear wheels and those north of and near the center line by the front wheels.

On cross examination, this witness said the back tire "burns" were found about the north edge of the slab and the front marks were between eight inches and a foot north of the center line; that the slab is eighteen feet wide, with a clearance to the south of the center line of about nine feet, in addition to the shoulder which is wide

enough for a car to park. This witness stated he did not hear the horn of the truck sounded.

Defendant asked peremptory instructions in the nature of demurrers at the close of plaintiff's case and at the close of all the evidence, which were overruled, and these findings of the court are assigned as error. In support of this appeal four points are presented and discussed. It is urged the court erred in refusing defendant's instruction in the nature of a demurrer at the close of plaintiff's evidence. In support of this contention, it is urged the mere fact of a collision does not make a cause of action; that the negligence of defendant must be shown as well as a causal connection between the negligence complained of and the collision, and the negligence charged must be shown to have been the proximate cause of the injury. Cases are cited in support of these well known principles of law, which we need not here set out, because the rules there enunciated are not controverted. It is defendant's contention that plaintiff in his evidence failed to meet the said requirements. The negligence charged in the petition was abandoned by plaintiff and the cause was submitted wholly under the humanitarian rule.

It is the law that in the consideration of a demurrer plaintiff's evidence must be accepted as true and any argument that it is not true may not be considered in passing on the demurrer. Citations in support of this rule are unnecessary. We have already referred to the testimony and from it we must conclude we are not warranted in considering this charge of error. This point is ruled against defendant.

It is urged, under point 2 of points and authorities, that the driver of a car shall enter into the highway only after giving a signal of his intention so to do, and shall then proceed carefully and must give all signals before backing up or entering upon the highway. [Citing Sec. 7777, sub-section (g), R. S. 1929, and cases construing the same.] However, as this point refers to alleged contributory negligence and the cause was submitted only under the humanitarian rule, contributory negligence has no place therein; and this is true whether the situation is brought about through obliviousness of the peril, inability to extricate himself, or mere foolhardiness. [McGowan v. Wells, 24 S. W. (2d) 633; Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482.]

Passing now to a consideration of defendant's point that the court erred in refusing defendant's peremptory instruction at the close of all the evidence, we are first directed to defendant's contention that, under all the evidence, plaintiff failed to make a case under the humanitarian rule, and the demurrer should have been sustained. In Banks v. Morris & Co., supra, l. c. 267, RAGLAND, J., speaking for the court, said:

"The constitutive facts of a cause of action under the humanitarian rule, stated in their simplest terms, without any of the refinements, limitations or exceptions which might arise on a particular state of facts, are contained in this formula: '(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured.' Evidence tending to prove these facts makes a prima facie case for plaintiff."

We need not repeat the evidence here. It is proper at this point to refer to the well-established rule that plaintiff is not only entitled to have his testimony accepted as true but is also entitled to any favorable inferences that may be drawn from defendant's evidence. In this connection the truck driver, testifying for defendant, admitted he could stop his truck, loaded as it was, within 150 feet. The testimony is that he did not stop his car in that distance, but stopped 200 feet beyond the point of collision, due to the impaired effectiveness of the brakes on the truck.

The testimony is susceptible of the construction by the jury that the driver of the truck, in the exercise of ordinary care, could have seen the Dodge car 750 feet away, and that it was within his view from that time until the collision. There was also testimony tending to show that if the driver of the truck had remained south of the black center line of the slab, he would have had room to pass the Dodge car in safety. The facts presented by the evidence were clearly for the jury's consideration, and there was no error in overruling the demurrer at the close of all the evidence.

It is not charged the petition fails to state a cause of action under the humanitarian rule. However, defendant urges the court erred in giving plaintiff's instructions numbered 1 to 4 inclusive, offered by plaintiff, and in refusing defendant's proffered instructions A-1, B-1, C, D and E. Defendant fails to point out wherein plaintiff's instructions 1 to 4 inclusive are erroneous. We may therefore consider this point abandoned. As to defendant's refused instructions, an examination of them shows each sought to instruct the jury on the question of contributory negligence which has no place in a case under the humanitarian rule. The court announced he would submit the case only on the humanitarian rule. There was no error in refusing these instructions. The court gave defendant's instructions asked under the humanitarian rule.

There is found no reversible error of record, and the judgment is accordingly affirmed. All concur.