**Abe PERSKY, Plaintiff-Appellant,**

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Defendant-Respondent.**

No. 33909.

St. Louis Court of Appeals, Missouri.

Oct. 26, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 29, 1971.

Rosecan & Popkin, St. Louis, for plaintiff-appellant.

Robertson, Ely & Wieland, Robert C. Ely, St. Louis, for defendant-respondent.

WOLFE, Judge.

This is an action for damages arising out of personal injuries sustained by the plaintiff when a truck that he was operating was struck by the defendant's switch engine. The case was submitted under the humanitarian doctrine and resulted in a verdict and judgment for the plaintiff in the sum of $7,500.00. Thereafter the defendant moved for a judgment in accordance with its prior motion for a directed verdict at the close of all of the evidence. The motion was sustained and the plaintiff appealed.

The plaintiff was an employee of L-K & Sons Metal Company. He was a foreman but his work consisted in part of loading and unloading scrap metal from the company's trucks and driving the trucks. His employer's place of business is located on Wharf Street in the City of St. Louis. Wharf Street extends along the east side of the grounds of L-K & Sons Metal Company northwardly to Branch Street which runs east and west. North of Branch Street the defendant's tracks extend southwardly and cross Branch Street slightly

west of where it is intersected by Wharf Street. There are two sets of tracks at the grade crossing. One is a short passing track that curves slightly to the east of the main track at the crossing on Branch Street. It comes from the main track a short distance north of the crossing and rejoins the main track a short distance south of the crossing.

The plaintiff on October 9, 1967, at about the hour of 5:30 P.M. after completing his day's work, drove a company truck north along Wharf Street. The truck was 30 feet long and had nothing in it but some empty drums. He intended to park it overnight at a filling station. He drove north on Wharf Street and turned left at Branch to travel westwardly. He stated he was traveling at a speed of 10 to 15 miles per hour as he went northwardly on Wharf. He said that he shifted down one gear to make his left turn and was proceeding at 5 to 10 miles per hour as he approached the first track he was to cross. This was the passing track. He never saw any train until he had crossed that track and proceeded on over to the main track where he was struck by defendant's locomotive which was traveling southwardly on it. He did not see the locomotive until a split second before he was struck. The engine collided with his truck at a point about 10 feet from the front of it, just behind the cab. He had a clear view of the railroad tracks throughout his travel northward and at the crossing for an estimated distance of 500 feet. At 10 miles per hour he could have brought his truck to a stop in a distance of 10 feet. He was quite familiar with the crossing and drove over it every day.

The plaintiff offered in evidence a deposition of the engineer who was operating the engine southwardly on the track toward the crossing. He stated that he started the bell ringing at a point about four blocks north of the crossing as he was about to pass a C. B. & Q. phone box near the track where some men were working. The bell is operated by a valve

that keeps it ringing until it is turned off. He started to blow the engine whistle when the engine was about 300 feet from the crossing. This is done by pulling the whistle cord. He saw the truck plaintiff was driving headed north on Wharf Street. There was a clear view of Wharf Street for several hundred feet. He saw the truck on Branch Street when he was 100 feet from the crossing but he could not say whether it was a few seconds before or after the plaintiff started across the passing track.

He stated that the engine had two sets of brake pressure systems; one to be applied when it was pulling cars, and one when the engine was traveling without a train of cars. If the train brakes are used to stop the engine when it is not pulling cars it would cause the wheels to slide on the rails which would lengthen the stopping distance as the pressure on the brakes would be much greater. As the engine was pulling no cars he used the system designed to stop the engine alone. He stated that it required about 100 feet to stop the engine traveling at 10 miles per hour including two seconds reaction time to release the whistle and push the brake forward and to cause the train brakes to set.

The plaintiff called as an expert witness a man named Bland who was a civil engineer and claimed to have specialized in the stopping distances of vehicles, including trains. He stated that a train traveling at 10 miles per hour, including normal reaction time, could be stopped in 38 feet. He said that the distance between the passing track and the track that the train was on was 21 feet 10 inches. The tracks are 4 feet 8½ inches in width.

The plaintiff was thrown from the cab of his truck by reason of the collision and sustained some injuries about which there is no dispute or issue raised.

The plaintiff's petition contained numerous allegations of primary negligence on the part of the defendant, none of which were proved, but as stated he went to the jury on humanitarian negligence, which was also pleaded. One of the grounds upon which the motion for judgment in accordance with defendant's motion for a directed verdict was sustained was that the evidence was insufficient to permit a finding of humanitarian negligence. That is the only issue before us on this appeal.

As the appellant states, there was no doubt that the plaintiff was in peril and did come into immediate danger and was injured by defendant's engine as it struck his truck as it crossed the track. This reduces the matter before us for determination to one question. Did the peril of the plaintiff arise at a time and place where and when the defendant engineer should have discovered the peril and had time thereafter by the exercise of ordinary care to stop or slacken the speed of the engine so as to avoid a collision? As stated in Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, l. c. 484:

"The constitutive facts of a cause of action under the humanitarian rule, stated in their simplest terms, without any of the refinements, limitations, or exceptions which might arise on a particular state of facts, are contained in this formula:

" '(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured.' "

The plaintiff-appellant in contending that the plaintiff was oblivious to his peril and that this should have been realized by the engineer in time to have stopped or slackened the speed of his engine cites us

to Campbell v. Chicago, Burlington and Quincy R. Co., Mo., 405 S.W.2d 899, 1. c. 903. In that case the court quoted with approval from Restatement of Torts, Second, Sec. 480, Comment b, as follows:

" ' * * * However, it is not necessary that the circumstances be such as to convince the defendant that the plaintiff is inattentive and, therefore, in danger. It is enough that the circumstances are such as to indicate a reasonable chance that this is the case. Even such a chance that the plaintiff will not discover his peril is enough to require the defendant to make a reasonable effort to avoid injuring him. Therefore, if there is anything in the demeanor or conduct of the plaintiff which to a reasonable man in the defendant's position would indicate that the plaintiff is inattentive and, therefore, will or may not discover the approach of the train, the engineer must take such steps as a reasonable man would think necessary under the circumstances.' "

The foregoing statement must be balanced by that which preceded it from the same source.

" ' * * * The defendant is entitled to assume that the plaintiff is paying or will pay reasonable attention to his surroundings; until he has reason to suspect the contrary, he has no reason to believe that the plaintiff is in any danger. Therefore, the defendant is liable only if he realizes or should realize that the plaintiff is inattentive and consequently in peril. * * *.' "

In order to bring himself within a situation of discoverable peril in time for defendant's engineer to avert a collision, the appellant asserts that the instant that he started on the passing track the defendant's engineer should have known that people do not ordinarily bring their vehicles to a stop straddling a railroad track. He seeks to support this statement by West v. St. Louis-San Francisco Railway Company, Mo., 295 S.W.2d 48. That case does not so hold. There was nothing in the evidence to indicate any danger in stopping on the siding which was visible to plaintiff from end to end.

We must determine this case from the facts and reasonable inferences that can be drawn from the evidence in favor of the plaintiff. These facts as set out above simply show that the truck was being driven by the plaintiff in a direction paralleling the track on which the defendant's train was traveling toward the intersection, and that as he so traveled he was facing the oncoming train which had its whistle blowing and its bell ringing and he had a view of the tracks for 500 feet. He had the same extended view as he reached the crossing. As he made his left turn at the crossing he was on the left side of his cab which was the side opposite to the approaching train. He proceeded into the train's path at 5 to 10 miles per hour when he had at least 24 feet in which to stop after reaching the outside rail of the siding and he required but 10 feet to do so. There was no evidence presented that should have alerted the engineer to the obliviousness of the plaintiff. Under such circumstances the engineer had no reason to believe that the plaintiff was inattentive and the court properly entered the judgment for the defendant.

Judgment is affirmed.

BRADY, P. J., and DOWD, J., concur.