242 S.W.2d 530 (1951)
LEFKOWITZ
v.
KANSAS CITY PUBLIC SERVICE CO.
No. 42115.
Supreme Court of Missouri, Division No. 1.
September 10, 1951.
Motion for Rehearing or to Transfer to Denied October 8, 1951.
*531 Clay C. Rogers, Rogers, Field & Gentry and Morris Dubiner, all of Kansas City, for appellant.
David Trusty and Sam Mandell, Kansas City (Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel), for respondent.
Motion for Rehearing or to Transfer to Court En Banc Denied October 8, 1951.
COIL, Commissioner.
In this action for $50,000 for personal injuries, defendant had verdict and judgment; plaintiff appeals. The sole question is whether the court erred in giving Instruction D-4. We shall refer to the parties as plaintiff and defendant.
We have concluded for reasons herein stated that the instruction is erroneous and that the case must be reversed and remanded.
Because of the limited scope of the question on this appeal, it will suffice to state the facts briefly. Plaintiff was a pedestrian who attempted to walk from the west to the east side of Troost Avenue (in Kansas City, Mo.) in the unmarked pedestrian crosswalk on the south side of 30th Street, which latter street intersects Troost at right angles. While so walking she was struck by, or she collided with, defendant's northbound streetcar. There was evidence adduced by plaintiff (defendant's evidence was in the main to the contrary) from which the jury could find that, before plaintiff stepped from the west curb of Troost, she looked to the north and south and saw defendant's streetcar 200' or 300' south of the point of impact; plaintiff at that time observed persons waiting to board the northbound streetcar at the car stop immediately across from her; plaintiff then looked north and continued to look north as she walked east until the left front corner of the streetcar struck her, at a place in the street about a foot east of the west rail of the northbound streetcar track on Troost; the streetcar travelled the 200' or 300' at a constant speed of 25 miles per hour; sounded no warning of its approach; failed to stop at the duly constituted stop despite the passengers waiting to board it, and proceeded into the crosswalk, striking plaintiff, and on across 30th Street before stopping.
Plaintiff went to the jury under the humanitarian doctrine, submitting failure to warn and failure to stop. Defendant does not contend on this appeal that the evidence did not justify the submission of failure to warn. Some remarks in its brief, however, indicate that defendant does not *532 concede the sufficiency of the evidence of obliviousness. The evidence heretofore noted was such that the jury could find that plaintiff was oblivious to the continued, unabated approach of the streetcar past the duly constituted stop where, to plaintiff's knowledge, passengers were waiting, and into the crosswalk which she was using; and this, even though plaintiff saw the streetcar some 200' or 300' to the south, before she left the west curb. Brungs v. St. Louis Public Service Co., Mo.App., 235 S. W.2d 81.
Instruction D-4 offered by and given for defendant, purports to define imminent peril. It is: "The Court instructs the jury that this case is submitted solely on what is known as the humanitarian doctrine. Now under such doctrine, the operator, Harry Jenson, owed the plaintiff no legal duty whatever unless and until after plaintiff was actually in what is defined below as a position of `imminent peril', if she was, from the movements of said street car, and under circumstances that would charge a reasonably careful street car operator with knowledge that such `imminent peril' existed to the plaintiff.
"By such `imminent peril' the Court does not mean the mere possibility of danger, or of injury, to her, but the Court means certain, immediate and impending peril of injury to her, and a likelihood of injury would not and does not constitute such imminent peril, or a position of imminent peril that would place upon the operator of the street car any duty towards the plaintiff."
This instruction not only defines imminent peril but goes further and, in our view, misdirects the jury as to the time when a duty on the streetcar operator to act may arise. Note the following language of the instruction: "a likelihood of injury would not and does not constitute * * * a position of imminent peril that would place upon the operator of the street car any duty towards the plaintiff." A jury must understand from this language that likelihood, i.e., probability, of injury to plaintiff cannot place any duty on the streetcar operator toward the plaintiff ("likelihood" and "probability" are synonymous. Webster's New International Unabridged Dictionary, 2nd Edition).
Such is erroneous because it precludes the jury from finding that there was a duty on the operator of the streetcar to act upon reasonable appearances of obliviousness at a time when such action would be effective to avoid injury. It is well settled that under the humanitarian doctrine an operator of a moving instrumentality has a duty to act upon reasonable appearances of obliviousness at a time when such action would be effective. This duty to act arises when it reasonably appears, or should reasonably appear, to the operator of an instrumentality exercising due care, that a person is oblivious, and will remain oblivious, and continue into the path of the moving object. The operator need not be convinced to a certainty that one is in fact oblivious and need not be convinced to a certainty that one oblivious will not at some point become aware (nonoblivious) of the approach of the moving instrumentality and thereafter, by his own action, avoid injury. Womack v. Mo. Pac. R. Co., 337 Mo. 1160, 88 S.W.2d 368, 371, and cases there cited; Perkins v. Term. R. Ass'n of St. Louis, 340 Mo. 868, 102 S.W.2d 915, 919; Frandeka v. St. Louis Pub. Serv. Co., Mo.Sup., 234 S.W.2d 540, 547.
It follows that, if the operator of a streetcar or train or vehicle must act upon reasonable appearances of obliviousness and must act at a time when action would be effective, the operator has the duty to act to avoid probable or likely injury as distinguished from certain injury to a person who, from reasonable appearances, is oblivious and intent upon proceeding into the path of the moving streetcar. This must be true, else the operator of a moving instrumentality would have no duty to act unless he was or should have been convinced to a certainty that a reasonably appearing oblivious person would not, at some point before injury, become aware of the approach and proximity of the moving object. As we have noted, however, the duty to act exists if it appears or should appear to an operator exercising ordinary care, *533 that there is reason to believe that a person who appears to be oblivious will remain oblivious. This duty to act upon a reasonable appearance that a person will remain oblivious necessarily includes the duty to act when it reasonably appears or should reasonably appear that there is a likelihood, i. e., a probability, of injury. Morhaus v. Hebeler, Mo.App., 104 S.W.2d 737, 739; Setser v. St. Louis Public Service Co., Mo.App., 209 S.W.2d 746, 750.
In this case, if the jury found that plaintiff was oblivious and intent upon walking into the path of the moving streetcar and found that the operator of the streetcar, from reasonable appearances, knew, or in the exercise of ordinary care should have known, that plaintiff was oblivious and apparently intended to walk into the path of the fast moving streetcar, then plaintiff was in a position of imminent peril at some time before she reached the path of the streetcar. It was the operator's duty to act to avoid plaintiff's danger at the instant plaintiff came into position of imminent peril. One of the conditions which created plaintiff's position of imminent peril was the likelihood or probability of injury to plaintiff. The operator could not wait until it became clearly apparent that injury to plaintiff was certain before he acted because at such time action on his part may have been too late to avoid the collision or to obviate plaintiff's impending peril.
We think the jury may well have understood from the instruction that there was no duty upon the operator to act at the time it reasonably appeared to him, or should have appeared to him, that plaintiff was oblivious and intent upon walking into the path of the moving streetcar.
Defendant directs our attention to the cases of Branson v. Abernathy Furniture Co., 344 Mo. 1171, 1180, 130 S.W.2d 562, 567, Crawford v. Byers Trans. Co., Inc., Mo.Sup., 201 S.W.2d 971, and Roeslein v. Chicago & E. I. R. Co., Mo.Sup. 214 S.W. 2d 13, in which we approved instructions defining imminent peril in this, or substantially this, language: "By `position of imminent peril,' as used in the instructions of the court, is not meant a place wherein there is just a mere bare possibility of an injury occurring; it means a place and position wherein there is certain danger." Defendant also calls attention to Kirkpatrick v. Wabash R. Co., 357 Mo. 1246, 212 S.W.2d 764, 768, where we said: "`Position of peril' or `imminent peril' as applied to the humanitarian doctrine does not mean a bare possibility of danger. It means a certain peril, a place where danger is imminently impending." It is at once apparent that the language of the foregoing instructions does not in any manner direct the jury that, in a humanitarian case submitted on failure to warn, wherein obliviousness is a necessary element, likelihood or probability of injury does not place upon the operator of a streetcar or other vehicle any duty toward the plaintiff.
It is true that in Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420, 421, and in Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114, 117, we said: "The meaning of the term `imminent peril' as the basic fact of the humanitarian doctrine has been well settled. The peril truly must be imminentthat is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril." In those cases we were not considering instructions attempting to define imminent peril; and the cases were not ones wherein plaintiff's position of imminent peril was by reason of his obliviousness. Furthermore, it is clear from the language used that we were using the word "likelihood" as denoting "possibility", because we said "a likelihood or bare possibility of injury" was not sufficient to create imminent peril. The statement, in the context of the particular cases, is accurate. It is true that a mere likelihood of injury is not sufficient alone to create imminent peril. But such statements are not tantamount to saying that a person may not be in a position of imminent peril where there is a likelihood or probability of injury as opposed to a certainty of injury. The language in the Blaser and Chenoweth cases, supra, may not be properly construed *534 as authority for an instruction, under the facts of the present case, which tells the jury that likelihood of injury may not place any duty upon the operator of a moving instrumentality to act.
Instruction D-4 in this case did not direct a verdict. It does, however, constitute such misdirection as may have affected the merits of the case. We believe that no other instruction in the case in any way cured the error therein contained.
Defendant urges that, when plaintiff's Instruction P-1 and defendant's Instructions D-2 and D-4 are read together, no misdirection to the jury remains. We are unable to agree with this contention.
Instruction P-1 hypothesized the facts that plaintiff, before crossing the street, saw the streetcar and thereafter became oblivious to the further approach of the streetcar and became and was in a position of imminent peril; that it was apparent to the streetcar operator that plaintiff was oblivious and intended to continue to walk into the path of the streetcar and was, by reason thereof, in imminent peril of a collision with the streetcar; that thereafter the operator of the streetcar could have warned or stopped, and his failure to do so was negligence which directly caused injury to plaintiff.
Instruction D-2 told the jury in effect that the operator of the streetcar had a right to assume that the plaintiff would stop in the clear of the streetcar until it reasonably appeared that she did not intend to do so, and that the motorman was required to do nothing until her actions reasonably indicated that she did not intend to stop in the clear; it furthermore admonished the jury that they should not consider any prior actions of the motorman in determining his negligence, if any, after it appeared that the plaintiff was not going to stop.
Neither of these instructions in any way removed the positive direction of Instruction D-4 that the likelihood of injury placed no duty on the operator of the streetcar toward plaintiff.
We believe Instruction D-4 contained positive misdirection which may have affected the merits of this case, and we are therefore constrained to hold that reversible error was committed in giving it. State ex rel. St. Joseph Belt Ry. Co. v. Shain, 341 Mo. 733, 108 S.W.2d 351, 355.
Accordingly, the case is reversed and remanded.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.