262 S.W.2d 40 (1953)
CASWELL
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 43460.
Supreme Court of Missouri. Division No. 1.
November 9, 1953.
*41 Mattingly, Boas & Richards and Lloyd E. Boas, St. Louis, for appellant.
Lyng, MacLeod & Davidson and Russell N. MacLeod, St. Louis, for respondent.
HOLLINGSWORTH, Judge.
A jury in the Circuit Court of the City of St. Louis returned a verdict for plaintiff in the sum of $15,000 for personal injuries sustained when defendant's northbound streetcar collided with her northbound automobile on Broadway in said city. Upon hearing defendant's motion for new trial, it was ordered that if plaintiff within five days remit $6,500 from the judgment entered on said verdict, the motion would be overruled, otherwise the motion was sustained; with which conditional order of remittitur plaintiff made timely compliance. The motion thereupon stood overruled and final judgment was entered in plaintiff's favor in the sum of $8,500. Defendant appealed.
The cause was submitted upon plaintiff's requested Instruction No. 1, hypothesizing humanitarian negligence of defendant if the jury found that as plaintiff's automobile and defendant's streetcar proceeded northward on Broadway the streetcar collided with the rear end of plaintiff's automobile, and that prior thereto:
(1) Plaintiff's automobile was in front of the defendant's streetcar, in close proximity to the track and within the overhang of the streetcar;
(2) Plaintiff was in a position of imminent peril of being struck and collided with by the streetcar and was oblivious thereto;
(3) The operator of the streetcar saw or could have seen plaintiff's automobile on the street there, in the position of imminent peril, and that plaintiff was oblivious thereof;
(4) Thereafter the operator with the means and appliances at hand and with safety to the streetcar, the occupants thereof and other persons and property thereabouts could have slackened the speed of the streetcar and avoided the collision;
(5) The operator did fail to slacken the speed of the streetcar, and in doing so, failed to exercise ordinary care and was negligent; and
(6) Plaintiff was injured as a result of such negligence.
Defendant contends that no submissible case was made, the instruction above outlined *42 submitted findings of fact not supported by substantial evidence, and said instruction unduly extended the danger zone.
In determining the sufficiency of the evidence to sustain the judgment of the trial court, we accept plaintiff's evidence as true, disregard defendant's evidence except as it may aid plaintiff's case, and give plaintiff the benefit of every legitimate inference. 3 Missouri Digest, Part 2, Appeal and Error, k 989.
Plaintiff was an employee of Reynolds Metal Company. On the morning of June 4, 1951, she was driving a Plymouth sedan northward on Broadway to her place of employment. Riding with her were three fellow employees, Mrs. Loretta Kozenczak, Mrs. Florence Rex and Mrs. Ola Brown. Mrs. Brown was absent from the city at the time of the trial.
Broadway runs north and south and is intersected by DeSoto and one block north of DeSoto it is intersected by Talcott. The collision occurred between these intersections. South of DeSoto, Broadway is 65 feet from curb to curb, but northward from the north line of DeSoto it is only 50 feet in width for a distance of about 370 feet, where it again widens to 60 feet for a distance of about 70 feet until it intersects Talcott. Thus the block bounded by DeSoto on the south and Talcott on the north is about 440 feet in length. The narrowing of Broadway north of DeSoto is due to its east curb being 15 feet farther to the west than it is south of DeSoto.
Two sets of streetcar tracks extend along the center of Broadway. The east tracks are used for northbound streetcars and the west tracks for southbound streetcars. They occupy a space of 15 feet in width. Due, however, to a gradual curvature to the east as they extend northward from DeSoto, the tracks are not uniformly distant from the east curb. At the north curbline of DeSoto, the east rail of the east tracks is 20 feet, 4 inches from the east curb; 60 feet north of DeSoto it is 17 feet, 4 inches; 120 feet north of DeSoto it is 15 feet, 7 inches; 160 feet north of DeSoto it is 15 feet, 4 inches; 170 feet north of De-Soto it is 15 feet, 4 inches; 195 feet north of DeSoto it is 15 feet, 7 inches; 220 feet north of DeSoto it is 16 feet.
As plaintiff drove northward on Broadway and approached DeSoto, she was driving alongside and about two and one-half feet west of a line of cars parked on the east side of Broadway. She was then east of the east rail of the northbound streetcar tracks. As she crossed DeSoto, she moved westward, due to the narrowing of Broadway north of DeSoto. There was also a line of parked cars along the east side of Broadway north of DeSoto. As she crossed the intersection or shortly thereafter she got on or in close proximity to the tracks. "It might have been right at the corner, a foot or so either way; it might have been right at the intersection. * * * They (her automobile wheels) were close to the tracks; whether they were on either side" she did not know. She was watching a bread truck parked at an angle on the east side of Broadway about 200 feet north of DeSoto, and had moved over "a little more" to avoid it. She did not know if she was "in the tracks or just on the other side of them". She was travelling about 18 to 20 miles per hour and proceeded at that speed in the same path, close to the east rail or upon it. The truck, parked on an angle and with its back door open, extended a foot or two westward beyond the other parked cars. After she had passed about 20 feet beyond the truck, her automobile was struck in the left rear by defendant's northbound streetcar, which she had not seen; nor had she heard any warning, and was unaware of its approach until it struck her automobile. The streetcar pushed her automobile about 25 feet northwestwardly before it came to a stop at an angle across the tracks. The violence of the collision severely injured her.
On cross examination, plaintiff testified that after she had crossed DeSoto her automobile wheels were a "little east, or a little west, or maybe right on the tracks; * * *." Shown a deposition she had priorly given, which contained the question: "And where *43 was the left side of your car with reference to the east rail of the northbound tracks?", and the answer: "I was east of it, I guess", she answered that she did not remember whether she made that answer, but "they asked me about the accident and how it happened, so I guess that is what I said."
On further cross-examination, plaintiff said she saw the truck as soon as she crossed the intersection and gradually started moving over. Again shown her deposition wherein she had answered a question in this manner: "I had saw the truck parked, and I had eased over, and I had to go over to keep from sideswiping the truck"; and then the further question: "In other words, you eased over further than what we have been talking about?", and the answer: "Yes", she said if those answers and that question were in the deposition, that was the way she had answered. But she again testified that from the time she saw the truck she started angling over gradually, not suddenly.
Plaintiff further testified that she did not look into her rear view mirror before getting on the tracks; that she had no occasion to do so; that she looked to her side as she "started easing over".
On re-direct examination, plaintiff was shown the following questions and answers from her deposition, and reaffirmed the answers therein given:
"Q. Well, what was your position with reference to the eastern most or east track of the northbound tracks? A. I guess I was just about on the track, maybe a little west of the track.
"Q. What track? A. The east track.
"Q. You didn't change a whole lot, then? A. No; I just kind of tapered off.
"Q. We're talking about the left wheels of your car? A. Yes.
"Q. They were either east of the track or on it? A. Yes."
On further cross-examination she testified:
"Q. Where were you with reference to the truck when you got on towhen your left wheels got on to the streetcar track? * * * A. I was either on them or close to them before I ever got to the truck.
"Q. What do you mean when you say `close to them'? How `close to them' is that? A. Well, that is just it. I don't know whether I was exactly on them, or whether I was an inch or two from them one way or the other; I really couldn't say."
Mrs. Kozenczak's version of the collision was as follows: When plaintiff was driving south of DeSoto her automobile was on the right side of the tracks. As she crossed DeSoto she drove to her left toward the tracks. Witness did not know for sure whether plaintiff was on the tracks, or almost. "Q. And when you say `almost', was it a question of feet or inches? A. Just inches." Plaintiff did not suddenly swerve to the tracks when she got to the parked truck. Plaintiff's automobile was struck at its left rear. The left rear fender, the wheel and the back end were struck. Plaintiff's car started to pull out before it got to the truck.
On cross-examination, witness said a Mr. Lucas from defendant's office took a statement from her, which she did not sign; that she told him, "We were moving about fifteen miles per hour, but I don't know how far ahead of the streetcar we were driving, but there was a Bond Bread truck on the northeast, angled into the curb, with the rear door open, and we had to pull over to our left to get around the truck; and, as we did so, the streetcar struck the left rear fender of our auto, * * *."
Mrs. Rex's version was as follows: Plaintiff got on to the streetcar tracks as she was crossing DeSoto, where [Broadway] starts narrowing; her left wheels were "practically" on the track. Witness could not remember plaintiff swerving at all to avoid the truck; she "was gradually going in to get away from those parked cars." Plaintiff's automobile was struck on its left rear. She heard no gong and did *44 not see the streetcar at any time prior to the collision.
On cross-examination, witness said she did not know exactly where the automobile was in relation to DeSoto when its wheels first got on the streetcar tracks; she supposed it would be closer to the truck than it was to DeSoto when it first got on the tracks. She was then shown a signed statement she had given to Mr. Lucas. The following portion was read to her: "We were northbound on Broadway going to work and were driving slightly ahead of the streetcar. I do not know how far or how fast, * * * but when we were at or near DeSoto Avenue, there was a Bond Bread truck parked too far out from the curb with its rear door open and the driver was getting bread out of the truck." The witness then testified in relation to the statement: "The best I can remember, at the time he (Lucas) came out I was fixing supper, and I had my three children there, and when he talked to me I said, `I don't remember too much about it,' and he said, "Well, I will help you along with it,' and he practically told we what happened." A further portion was read to her as follows: "This caused Mrs. Caswell to pull over to her left to get by and, as she did, the streetcar which was very close behind struck her left rear fender and the auto must have gotten caught on the streetcar for it moved for quite a ways, and the auto finally got around in front of the car and was pushed a few feet in front of the car before it got stopped." She was then asked if she remembered telling Mr. Lucas that, to which she replied, "Not exactly." On re-direct examination, witness again said that plaintiff never at any time swerved suddenly to avoid the truck.
Defendant's operator, Fred Pfaff, testified that the streetcar was travelling about 20 to 28 miles per hour after crossing De-Soto; that when he first saw plaintiff's automobile it was on the right side of the streetcar, going about 30 miles an hour, a little faster than the streetcar, and in the act of passing the streetcar. There was a bread truck parked on the east side of Broadway in the block between DeSoto and
Talcott; that when he first saw the automobile through the front door of the streetcar it was about even with the truck; that the automobile swung left toward the tracks; that he then rang the bell; that the rear bumper of the automobile caught the door of the streetcar in passing; that there was room for the automobile to pass between the parked cars and the streetcar; that he started to slow up when he saw the automobile and continued to apply his brakes, a full application, until the accident happened; and that he moved approximately 45 feet from the time he first saw the automobile until the collision occurred.
On cross-examination, the operator testified he was going 22 or 23 miles an hour; that he might have been going 28 miles an hour; that the bread truck was parked "maybe" a half block from the intersection; that the impact occurred about 30 feet from DeSoto; that after he applied the brakes he travelled at least 100 feet and then came to a stop; that travelling at 22 miles an hour he could stop the streetcar in 140 feet, and at 28 miles an hour he could stop within 160 feet; and that the projecting truck was between seven and nine feet wide and was two or three feet from the curb.
Defendant's witness, Horn, who was familiar with truck bodies, said the truck was seven or eight feet wide and took up a lot of room, more than the other cars. He estimated the overhang of the streetcar to be sixteen inches. Defendant's witness, Rogan, who was the operator of the truck, said it was parked about 200 feet north of DeSoto, parallel to and about six or eight inches from the east curb of Broadway, and that the width of the truck was about six and one-half feet.
The testimony of defendant's other witnesses, in general, supports the testimony of defendant's operator and will not be narrated.
Defendant contends there was no substantial evidence as to when or where plaintiff's automobile came into imminent peril, no evidence as to the speed of the streetcar at that time and no evidence of the ability of the operator to slacken the speed thereof. *45 Its position is that the testimony of plaintiff and her witnesses is so fraught with uncertainty, conjecture, guesswork and contradiction it fails to establish with reasonable certainty when and where plaintiff's automobile came into imminent peril of being struck by the streetcar, and whether thereafter defendant could have slackened the speed of the streetcar and thereby avoided the collision.
Plaintiff's favorable testimony was that "right at the corner [the north curbline of DeSoto], a foot or so either way", her automobile wheels "were close to the tracks", whether they were on either side she "did not know"; that after crossing DeSoto she was "a little east, or a little west, or maybe right on the tracks"; that she didn't know whether she was exactly on the tracks, or whether it was one or two inches either way, before she reached the truck; and that she bore gradually to her right until she was struck by the streetcar at a point twenty feet beyond the parked truck. Mrs. Kozenczak's favorable testimony was that when plaintiff was driving north of DeSoto her automobile was "almost" on the tracks; and, when asked if it was a question of feet or inches, she replied, "Just inches." Mrs. Rex's favorable testimony was that as plaintiff crossed DeSoto her left wheels were "practically" on the tracks. "Practically" means: In effect; actually, so far as results and relations are concerned; as a matter of fact. The Century Dictionary.
It is true that the testimony of plaintiff and her witnesses was somewhat discredited on cross-examination, and to some extent contrary to prior statements (and, in the instance of plaintiff, a deposition). But its probative value and weight, unless so uncertain and contradictory as to render it entirely valueless, was for the jury. Reeves v. Thompson, 357 Mo. 847, 211 S.W.2d 23, 27-28; Johnson v. St. Louis Public Service Co., Mo.Sup., 251 S.W.2d 70, 73-74.
We think that plaintiff's evidence when viewed in the light most favorable to plaintiff and in connection with the undisputed facts as they affected the flow of traffic at the time and place plaintiff was injured warranted the jury in finding that her automobile was within or perilously close to the path of the overhang of the approaching streetcar from the time plaintiff's automobile crossed DeSoto until it was struck. When plaintiff crossed DeSoto she of necessity had to veer sharply westward, due to the narrowing of Broadway north of DeSoto. The curvature of the tracks eastward from that point also further narrowed the distance between the east rail of the northbound track and the east curb of Broadway, until they were only 15 feet, 4 inches apart. The streetcar's overhang of 16 inches further reduced the clearance distance to 14 feet. The parked cars would occupy six or seven feet of that space, leaving only seven or eight feet for the passage of plaintiff's automobile, which the evidence showed was six feet wide. Reasonable safety would require plaintiff to maintain some clearance between the parked cars and her automobile. Obviously, there remained a very narrow path in which plaintiff would be required to travel and yet keep her automobile beyond the range of the streetcar's overhang. Now, as plaintiff crossed DeSoto, she also saw about 200 fee ahead of her the parked truck projecting (she said "a foot or two", and defendant's operator said "two or three feet") beyond the line of parked cars. To clear it with reasonable safety, plaintiff was forced to drive within the overhang of the streetcar. She was unaware of the approach of the streetcar and intent upon clearing the projecting truck. The way ahead of her was clear if she bore sufficiently to her left to avoid the truck; otherwise, it was not. It is reasonable to infer that she drove as she said she did, gradually bearing to her left to avoid the truck; and any observant person would see that, in so doing, she would at all times be within or perilously close to the range of the overhang of a streetcar approaching from her rear; at least, a jury could so find.
Furthermore, viewing the evidence most favorable to plaintiff, we believe the jury was warranted in finding that defendant's *46 operator was chargeable with knowledge of plaintiff's position of imminent peril from the time she crossed DeSoto. She was so closely in front of his streetcar that they came into collision about 220 feet after crossing DeSoto. Plaintiff was angling westward to avoid the truck, which truck the operator admittedly saw projecting two or three feet beyond the line of parked cars. Certainly, a jury reasonably could find that under the conditions there existing, defendant's operator, in the exercise of ordinary care, would foresee or should have foreseen that she would continue to bear to the west and further encroach upon the tracks as she approached, came abreast of and passed beyond the projecting truck for such distance thereafter as would enable her to safely turn back to her right; and that if the streetcar and the automobile continued at their same rates of speed the streetcar would overtake the automobile before it had passed safely beyond the truck. In such a situation it became and was his duty to exercise ordinary care to avoid striking plaintiff. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 485; Woods v. Kurn, Mo.App., 183 S.W.2d 852.
Having concluded the evidence warranted a finding that plaintiff was in a position of discoverable imminent peril from the time she crossed DeSoto and that defendant's operator was chargeable with knowledge thereof, the question remains as to whether the evidence warranted a finding that defendant's operator, with safety to himself, his passengers and other persons and property thereabout, could have slackened the speed of the streetcar and avoided the collision. The evidence, viewed in the light most favorable to plaintiff leaves no doubt of that fact. Plaintiff's automobile travelled at a constant speed of 18 to 20 miles per hour and the streetcar at 20 to 28 miles per hour; approximately, a ratio of 2 to 3. The jury could have found that the streetcar followed plaintiff a distance of more than 200 feet after she was in a position of discoverable imminent peril. Travelling at 28 miles per hour, it could have been stopped within 160 feet, and, of course, could have been sufficiently slackened to have avoided the collision.
Furthermore, if plaintiff was "only inches" from, "practically" on the tracks after crossing DeSoto and thereafter bore gradually to her left, she was within or of necessity would come into the path of the streetcar's overhang within a very short distance; surely, it would seem within 100 feet, in which event she would still have been more than 100 feet and the streetcar would have been more than 150 feet from the point of collision. A jury could infer that its speed could have been sufficiently slackened to avoid the collision within less distance than 150 feet.
The conclusions above reached dispose of defendant's contention that Instruction No. 1 submitted and authorized the jury to make findings not supported by substantial evidence.
Defendant also says that Instruction No. 1 unduly extended the danger zone and assumed that the plaintiff was in a position of imminent peril at all times her automobile was in close proximity to defendant's tracks and within the overhang of the streetcar. It is not subject to that criticism. It declares that if the jury finds that prior to the collision plaintiff's automobile was in front of the streetcar with its left wheels in clse proximity to the north-bound track and within the overhang of the streetcar and that plaintiff was in a position of discoverable imminent peril, and that thereafter the operator could have slackened the streetcar, etc. It directs the jury, as it should, to determine if, when and where plaintiff came into a position of discoverable imminent peril, and whether thereafter defendant could and should have slackened the speed of the streetcar and avoided the collision. That was a proper submission under the evidence in this case. Harrington v. Thompson, Mo.Sup., 243 S.W.2d 519; Wofford v. St. Louis Public Service Co., Mo.Sup., 252 S.W.2d 529.
The judgment is affirmed.
All concur.