Ross E. NORED, Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY,
a Corporation, Appellant.

No. 46476.

Supreme Court of Missouri,

Division No. 1.

Dec. 8, 1958.

Motion for Rehearing or to Transfer to
Court en Banc Denied Jan. 12, 1959.

Frank B. Green, St. Louis, for appellant, Lloyd E. Boas, St. Louis, of counsel.

Henry C. Stoll, Eugene W. Wines, St. Louis, for respondent.

COIL, Commissioner.

About 7:30 on a clear, dry night in October 1956, appellant's eastbound streetcar struck the 1956 4-door Ford sedan operated by respondent northwardly on the east side of Whittier at its intersection with Olive in St. Louis. Olive and Whittier intersect at right angles. Although Olive is slightly downgrade from the west, both streets are reasonably level in the intersection, and each is 36 feet wide. There are buildings on each corner and "dangerous intersection" signs guard each approach. (The parties will be referred to hereinafter as they were designated in the trial court.)

Plaintiff submitted his case on defendant's averred primary negligence in exceeding the 30 m. p. h. speed limit and on its alleged humanitarian negligence in failing to slacken speed. Defendant has appealed from plaintiff's $7,782.25 judgment and contends the trial court erred in failing to direct a defendant's verdict because plaintiff failed to adduce evidence from which a jury reasonably could have found that the violation of the speed limit was a proximate cause of plaintiff's injuries, because plaintiff was guilty of contributory negligence as a matter of law, and because the evidence was insufficient to support a reasonable finding that defendant in the exercise of ordinary care could have slackened speed sufficiently to have avoided striking the automobile.

A review of the evidence from a standpoint favorable to plaintiff justifies this statement. Plaintiff, driving his brother's 1956 Ford, proceeding north on the east half of Whittier with its left side about 2 feet east of the center line, came to a stop 1 or 2 feet south of the south curb line of Olive. He looked to his left, where his view was limited to 100 feet west on Olive, and saw no traffic approaching. He moved forward slowly at 2 or 3 m. p. h., and when the front end of the automobile was 1 or 2 feet north of the south curb line of Olive, he again looked to his left and for the first time saw defendant's approaching streetcar at a place he estimated to be about 170 feet away. He did not at the time observe the streetcar's speed but there was nothing about its speed which caused him to pay particular attention to it. Plaintiff then looked to his right and then forward. He heard a noise, again looked to his left and saw the streetcar about 20 feet away moving at least 40 m. p. h. By that time the front of the automobile was midway between the rails of the eastbound track, traveling at 5 m. p. h. and accelerating. Plaintiff had no recollection of the actual collision but the impact point on the automobile was midway between front and rear. Plaintiff and some of his passengers were thrown clear and the automobile came to a stop "wrapped around" the streetcar's left front, which was 31 to 86 feet east of the collision point. The streetcar had proceeded for a distance of 300 feet at a speed estimated by different witnesses to be from 30 to 45 m. p. h., and there was no slackening until the collision. The streetcar lights and the automobile headlights were burning.

■ Defendant's first contention is that there was no evidence to justify a reasonable finding that the "excess" speed, i. e., speed above the 30 m. p. h. ordinance rate, was a proximate cause of the collision. Defendant cites cases in support of the proposition that the fact alone that a defendant's vehicle is exceeding an ordinance speed limit at accident time raises no presumption that an ensuing collision was caused by the speed in excess of the ordinance limit, but that other evidence must support a finding of proximate cause. The difficulty with defendant's contention in this case is that demonstrably the evidence afforded a reasonable basis for a jury finding that plaintiff's injury would not have occurred if defendant's streetcar had been running at a speed within the ordinance limit.

■ There was no dispute about the fact that the northbound automobile was

struck in its center as it straddled the rails of the eastbound track. There was no evidence of the length of a 1956 4-door Ford, and there was no evidence of the width of the overhang of defendant's streetcar. While we may not take judicial notice of a particular automobile's length, we do know that its length did not exceed 20 feet and that the overhang of a streetcar is about 2 feet. So noting, it is apparent that at collision time plaintiff's automobile needed to travel an additional 12 feet in order to have cleared the streetcar's path. Plaintiff testified that an instant before the collision, he was traveling 5 m. p. h. and accelerating. At 5 m. p. h., it would have taken plaintiff about 1.6 seconds to have traveled that 12 feet. There was evidence that the streetcar traveled the last 300 feet at 40 m. p. h. At 40 m. p. h. it took the streetcar about 5.1 seconds to reach the collision point. At 30 m. p. h., it would have taken the streetcar about 6.8 seconds to have reached the collision point. Thus, it is apparent that if defendant's streetcar had traveled 30 m. p. h. (i. e., not in excess of the speed limit) rather than 40 m. p. h., it would have reached the collision point 1.7 seconds later than it did and that by then plaintiff's automobile would have been clear of the streetcar's path.

■ Defendant, to support its contention that plaintiff was guilty of contributory negligence as a matter of law, asserts that plaintiff saw the streetcar approaching, failed to observe its speed, but drove heedlessly into its path when he could have stopped short thereof and avoided the accident. We are of the opinion, however, that the question of plaintiff's contributory negligence was properly left to the jury's determination.

■ ▪ It is true, as defendant contends, that plaintiff testified that he saw the streetcar approaching from a distance west which he estimated to be 170 feet, did not observe or, perhaps more accurately, did not estimate, its speed but turned his attention to the east. Plaintiff also said, however, that there was nothing unusual about the streetcar's speed which would call his attention to it. We think that testimony was reasonably subject to the construction that the reason plaintiff did not observe (estimate) the streetcar's speed was that it appeared irrelevant in that he judged the streetcar to be sufficiently far away that its proceeding at a reasonable speed would constitute no danger to him in crossing the track. Further, there was evidence that plaintiff entered the intersection at a slow rate of speed when the streetcar was still 170 feet away. Thus, plaintiff properly could believe, in the absence of facts which would make it appear to a reasonably prudent person that to enter the intersection probably would result in a collision, that having entered the intersection first, he had the right of way, and that the streetcar would approach the intersection at a speed not only within the ordinance speed limit but with such care as to permit plaintiff to safely exercise his right of way. Pitcher v. Schoch, 345 Mo. 1184, 139 ,S.W.2d 463, 466 [1–3]; Creech v. Blackwell, Mo., 298 S.W.2d 394, 400 [5] [6]. Moreover, while plaintiff had a duty to continue to look out as he proceeded across the intersection, the evidence shows that he did look to the left, then to the right, and then forward, and that when he again looked west the collision was imminent. Of course, "one cannot keep an uninterrupted watch" in all directions. Albert H. Hoppe, Inc. v. St. Louis Public Service Co., Mo.App., 227 S.W.2d 499, 502 [7].

Under all the circumstances, we should not say as a matter of law that plaintiff was negligent in continuing across the intersection despite his knowledge that the streetcar was approaching.

■ Defendant contends that plaintiff failed to make a submissible humanitarian case on failure to slacken. In determining whether there was evidence to support a reasonable finding by the jury that after plaintiff came into a position of imminent

peril, defendant, in the exercise of ordinary care, could have slackened the speed of its streetcar sufficiently to have avoided colliding with the automobile in which plaintiff was riding, we consider the evidence from a standpoint favorable to plaintiff. The crucial question is how far away from the collision point defendant's streetcar was at the time when, a jury reasonably could have found, plaintiff came into imminent peril.

Plaintiff contends that a jury reasonably could have found that he came into imminent peril when he started his automobile forward from its stopped position 2 feet south of Olive Street's south curb line. That, on the theory that inasmuch as plaintiff could see the streetcar after the automobile had moved forward 4 feet, the streetcar operator could have seen the front of the automobile as it started forward from its stopped position and that from the time the automobile started forward the streetcar operator should have recognized that plaintiff was oblivious to his danger from the approach of the streetcar.

Defendant, on the contrary, contends that there was no evidence from which a jury reasonably could have found that plaintiff was in imminent peril until or just an instant before the front of the automobile reached a point where it could not thereafter be stopped short of the streetcar's path. That, on the theory that plaintiff was admittedly nonoblivious and therefore the zone of peril was as narrow as indicated.

In our view, the zone of imminent peril was not as wide as plaintiff contends or as narrow as defendant would have it. That, for these reasons. It is true, as defendant contends, that plaintiff was aware of the approach of defendant's streetcar and, of course, was not oblivious thereto. But while admittedly not oblivious of its approach, there was evidence from which a jury reasonably could have found that for some short distance prior

to the automobile's front reaching the path of the streetcar's overhang, defendant, in the exercise of ordinary care, should have known from the reasonable appearances that plaintiff was oblivious to his danger from the streetcar's approach and proximity but was intent on driving the automobile into the streetcar's path. Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 196 S.W.2d 1000, 1002, 1003 [4]; Highfill v. Wells, Mo., 16 S.W.2d 100, 103 [2, 3]; Brungs v. St. Louis Public Service Co., Mo.App., 235 S.W.2d 81, 84 [3]; Diel v. St. Louis Public Service Co., 238 Mo.App. 1046, 192 S.W.2d 608, 611 [2]. "It is the reasonable appearances of the situation that imposes the duty to act." Turbett v. Thompson, 363 Mo. 577, 252 S.W.2d 319, 321; Lefkowitz v. Kansas City Public Service Co., Mo., 242 S.W.2d 530, 532 [3]. Cf. Ukman v. Hoover Motor Express Co., Mo., 269 S.W.2d 35, 38 [4]. (And while, as also noted in the Turbett case, supra, 252 S.W.2d at page 321, "a plaintiff may destroy a case of apparent obliviousness by testifying that he was not actually oblivious," still, when plaintiff is relying upon obliviousness of danger, and there is evidence to support a reasonable finding thereof, such obliviousness is not necessarily destroyed by testimony that plaintiff was aware of the vehicle's approach.)

If defendant's operator, in the exercise of ordinary care, had seen everything he could or should have seen as plaintiff approached the intersection, he would have watched the automobile start from a standing position 2 feet south of Olive Street's south curb line and proceed slowly into the intersection and at an increasing rate of speed traverse the short distance between the south curb and the streetcar's overhang, a distance of about 11 feet. Plaintiff, from a stopped position, was going 2 or 3 m. p. h. when he had traveled about 4 feet and from there steadily increased his speed so that at collision time he was going 5 m. p. h. and accelerating. Assuming (conservatively from plaintiff's

standpoint) that plaintiff traveled at an average speed of 3 m. p. h. from his stopped position to a place just short of the streetcar's overhang, it took plaintiff 2.5 seconds to traverse that distance. Now at some time during that period of 2.5 seconds as plaintiff drove at a slow but nevertheless steadily increasing rate of speed toward the streetcar's path, a jury reasonably could have found that defendant should have become aware that plaintiff was oblivious to the danger from the streetcar's approach and was intent on driving the automobile into the streetcar's path despite its approach. The exact point where defendant was chargeable from the reasonable appearances of the situation with the fact of plaintiff's imminent peril was for the jury to determine. We think it reasonable to say, however, that the jury could have found that time to have been at least 1 second (about 4 or 5 feet) prior to the time the front of plaintiff's car reached the path of the streetcar's overhang.

It has been noted that the automobile was struck in its center and we have assumed that the automobile was not longer than 20 feet and that the streetcar's overhang was about 2 feet. Consequently, after the front of plaintiff's car reached the edge of the overhang area, the automobile traveled 12 feet which (favorably to defendant) we shall assume he traveled at 5 m. p. h. or in 1.6 seconds. So that from the time when the jury reasonably could have found plaintiff came into imminent peril, of which defendant in the exercise of ordinary care should have known, 2.6 seconds elapsed during the time plaintiff traveled to the collision point. There was testimony that defendant's streetcar was then traveling 45 m. p. h. At 45 m. p. h. and 2.6 seconds, the streetcar was 171.6 feet from the collision point when (a jury reasonably could have found) defendant should have recognized that plaintiff was in imminent peril and when defendant's duty to act upon the reasonable appearances of the situation arose. No

reaction time was shown. Assuming that defendant's operator's reaction time was .75 of a second, during which the streetcar traveled 49.5 feet, the operator had 122.1 feet in which to slacken. The streetcar traveled the 122.1 feet in 1.85 seconds at a constant 45 m. p. h. without slackening and collided with the center of the automobile. As noted heretofore, it would have taken plaintiff 1.6 seconds to have driven the automobile clear of the streetcar's path. So it is apparent that instead of traveling the 122.1 feet at 45 m. p. h. in 1.85 seconds, the streetcar needed to travel that 122.1 feet in 1.85 seconds plus 1.6 seconds, or in 3.45 seconds, in order to have avoided a collision. That means that the streetcar needed to have slowed to an average speed for the 122.1 feet of about 24 m. p. h.

There was no direct evidence of defendant's stopping distances or of its ability to slacken at the speeds mentioned in evidence. As noted, there was testimony that defendant's streetcar actually came to a stop within 31 feet to 86 feet east of the collision point. That stopping distance, however, was affected to some extent by the collision and by the fact that the automobile was pushed eastwardly by the streetcar and came to a stop apparently against the streetcar. We may not take judicial notice of the distance in which a streetcar can be stopped under particular conditions. We think, however, that the evidence that the streetcar came to a stop in 86 feet including reaction time, even though that stopping distance was shortened by the circumstance noted, and the fact that defendant had 122.1 feet after reaction time in which to slacken from 45 m. p. h. to an average speed of 24 m. p. h., was sufficient substantial evidence from which the jury could have reasoned that defendant's operator, in the exercise of ordinary care, with the means and appliances at hand and with safety to himself and others, could have slackened the speed of the streetcar sufficiently to have avoided the collision, after he saw or should have seen plaintiff

in a position of imminent peril. See, Peterson v. Tiona, Mo., 292 S.W.2d 581, 583 [3].

Defendant also contends that the trial court erred in giving plaintiff's verdict-directing instructions 1 and 2. Its reasons are the same as those asserted on the submissibility questions and thus its contentions as to the instructions have been decided adversely to defendant.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.