Rudolph RUDLOFF, Appellant,

v.

Rolan M. JOHNSON, Appellee.

No. 16121.

United States Court of Appeals
Eighth Circuit.

June 19, 1959.

Francis R. Stout, St. Louis, Mo. (Richard M. Stout, St. Louis, Mo., was with him on the brief), for appellant.

Russell N. MacLeod, St. Louis, Mo. (Robert L. Lyng and Lyng, MacLeod & Davidson, St. Louis, Mo., were with him on the brief), for appellee.

Before SANBORN, VAN OOSTERHOUT, and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

This diversity action for damages growing out of an automobile collision was commenced in the Circuit Court of St. Louis County, Missouri. Rudolph Rudloff, appellant herein, was plaintiff and Rolan M. Johnson and Bertha F. Johnson were defendants. After the action was removed to the United States District Court, an answer was filed on behalf of the defendants which pleading was signed by the attorneys representing defendants' insurance carrier. Later, and on March 15, 1957, and through attorneys other than those who filed the answer, Rolan Johnson filed a counterclaim seeking damages for his personal injuries. Thereafter, and on June 6, 1957, this stipulation for dismissal was filed in the United States District Court:

"All of the matters and things in controversy in the above entitled cause having been adjusted, compromised and finally settled, it is hereby stipulated and agreed by and between plaintiff and defendants that this cause shall be dismissed, with prejudice to any other or future action on account of the matters and things contained and set forth in plaintiff's petition and that court costs shall be paid by the defendants.

"The undersigned attorney for p[l]aintiff does hereby waive his right to allowance by this Court of attorney fee as provided for by law, including allowances under provisions of title 28, Section 1923, U.S. C.A.

"Witness our hands at St. Louis, Missouri, this 7th day of May, 1957.
                    "Rudolph Rudloff,
                              Plaintiff.
              "Arthur E. McLeod,
                  Attorney for Plaintiff.
              "Hubert I. Binowitz,
                  Attorney for Defendant."

Mr. Binowitz, the attorney who signed the stipulation on behalf of defendants, in fact represented their liability insurance company, but did not represent Rolan Johnson in his claim for damages, upon which the counterclaim was based. On August 23, 1957, defendant Johnson filed an amended counterclaim, which plaintiff, through his present lawyers, unsuccessfully sought to have dismissed on the ground that the stipulation for dismissal constituted a full settlement of all claims arising out of the automobile collision, including Johnson's counterclaim.

Upon a trial of the counterclaim Johnson recovered a substantial verdict and judgment, and after unavailingly moving for judgment n. o. v. plaintiff appealed.

We shall first consider the point here presented that the stipulation for dismissal operated to estop appellee from prosecuting his counterclaim.

Rule 41(a) (1) of Federal Rules of Civil Procedure, 28 U.S.C.A., dealing with voluntary dismissal and the effect thereof, provides two methods whereby an action may be dismissed by the plaintiff without order of court. One "(i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs," or "(ii) by filing a stipulation of dismissal signed by *all parties* who have appeared in the action. *Unless otherwise stated* in the notice of dismissal or stipulation, the dismissal is without prejudice, \* \* \*." (Emphasis supplied.) Thus it is evident that the stipulation entered into by the parties, being signed by plaintiff, his attorney, and the attorney responsible for the defense to plaintiff's allegations of negligence, effectively dismissed plaintiff's (appellant's) petition without an order of court. But it by no means follows that such dismissal carried with it the counterclaim, which, as we have seen, was of record when the stipulation was filed. In the first place the logical construction to be placed upon the stipulation itself is that it operated to dismiss only appellant's cause of action. It made no mention of the counterclaim, but rather re-

cited " * * * that this cause shall be dismissed, with prejudice to any other or future action on account of the matters and things contained and set forth *in plaintiff's petition * * *"* (Emphasis supplied.) While we are mindful that the stipulation is prefaced with the statement "(a)ll of the matters and things in controversy in the above entitled cause having been adjusted, compromised and finally settled," etc., we believe that consideration of the stipulation in context compels the conclusion that the parties intended to limit the effect of the stipulation to dismissal of appellant's cause of action.

Secondly, and of vital importance, are the circumstances surrounding the execution and filing of the stipulation. Prior to the trial, Judge Weber held a conference with the attorneys appearing on this appeal in connection with his refusal to dismiss the counterclaim. Without dispute, it was developed that neither appellee nor the personal attorneys representing him on his counterclaim, had been consulted with respect to the dismissal of appellant's petition, and that the settlement with appellant was effected by appellee's liability insurance company alone. As we have seen, the stipulation, although being signed personally by appellant and his personal attorney, was not signed by appellee or his attorneys who instituted and prosecuted the counterclaim on his behalf. So far as this record is concerned neither appellee nor his attorneys was aware of the dismissal of appellant's cause of action until after the stipulation was filed. The case of England v. Yellow Transit Co., 240 Mo.App. 968, 225 S.W.2d 366, relied upon by appellant at this point, is clearly distinguishable. There, the defendant-employer, which had counterclaimed for property damages, settled with plaintiff, the parties stipulating that plaintiff's action be dismissed with prejudice. The defendant-employee, through separate attorneys, had counterclaimed for personal injuries. The stipulation expressly stated that the personal injury counterclaim of the defendant-employee remained outstanding, but no mention was made of the employer's pending counterclaim for property damages. We do not understand that the court's action in holding that dismissal of the counterclaim for property damages was an implied condition of the release and within the contemplation of the parties, in any way declares the substantive law of Missouri to be, as contended by appellant, that since the stipulation here did not *expressly* except appellee's counterclaim, it was automatically disposed of, although neither appellee, nor his personal attorneys, was a party to the agreement. Of particular interest in regard to the independent counterclaim of the defendant-employee in the England case is this observation by the Court, 225 S.W.2d at page 369: "The stipulation of settlement expressly excepted the counterclaim of Ernie Davenport for the obvious reason that he was not a party to the settlement and was represented by other counsel." Under the circumstances here, we must hold that the trial judge properly permitted appellee to prosecute his counterclaim. Cf. Pioche Mines Consol. v. Fidelity-Philadelphia Trust Co., 9 Cir., 206 F.2d 336, certiorari denied 346 U.S. 899, 74 S.Ct. 225, 98 L.Ed. 400.

Alternatively, the rather novel contention is advanced by appellant that when the trial court refused to dismiss the counterclaim, appellant should have been permitted to ignore the dismissal of his petition and allowed to try the issues tendered thereby. There was and is no suggestion that the stipulation was induced or procured by fraud, that there was a failure of consideration or that any other reason exists sufficient in law to set it aside. It was intended by appellant as a full settlement of his claim and a dismissal of his lawsuit, it had precisely that effect, and appellant is bound thereby.

As observed at the outset, this litigation had its origin in an automobile collision. The case was submitted to the jury on the theory that appellant was

guilty of humanitarian negligence, as that doctrine has been established by Missouri law. Since appellant's principal assignment is focused upon failure of the proof to make a submissible case under the humanitarian doctrine, a review of the evidence in the light most favorable to appellee is in order.

United States Highway No. 61-67 in St. Louis County, Missouri and at the place of occurrence, is made up of four lanes of concrete, each lane being approximately 10 feet wide, with an overall width of 40 feet. Appellee had been operating his automobile, with his wife Bertha F. Johnson as a passenger therein, in a southwardly direction. Desiring to stop for the night at a tourist court which was situated to the east of the highway, appellee pulled off the pavement and onto the shoulder on the west side, which was also the entrance to a service station—he then turned his vehicle so that it was facing the pavement for the purpose of crossing the highway to gain entrance to the tourist court. It was about 6:15 or 6:30 o'clock P.M. Central Standard Time, and although it was "dusk," lights were not required for driving. The weather was clear, pavement dry, visibility good. Before attempting to cross the highway, appellee "glanced" to the south and saw appellant's automobile approaching 700 or 750 feet away, "and I immediately started across the road." When the front of appellee's automobile was approximately 2 feet over the center line of the highway, appellee again "glanced" to his right and saw appellant's automobile 300 or 325 feet away. At that time appellee's automobile was traveling at a speed of 5 miles per hour, the approaching vehicle was straddling the line dividing the two lanes for northbound traffic and traveling at a speed estimated by appellee to be 60 miles per hour. Appellee then accelerated the speed of his automobile, but did not again look to his right or see appellant's vehicle. When about two-thirds of appellee's automobile was completely off the paved portion of the highway on the

east side, traveling at 10 miles per hour, it was struck near the center of the right front door by the front of appellant's automobile. Appellee testified when he saw the other automobile 300 or 325 feet away he thought it was safe for him to continue on across the highway. The impact was of such force that appellee sustained serious injuries, his wife sustained injuries which resulted in her death, appellant and his wife also were injured, and appellant's mother riding in the rear seat of his automobile sustained injuries which caused her death.

Appellant's version of the occurrence, again viewed favorably to appellee, was that when he was 300 feet to the south he first saw appellee's automobile; that it was on the west shoulder of the highway stopped or moving slowly. At that time appellant was traveling at a speed of about 50 miles per hour. He observed appellee's automobile moving across the highway. When he first observed appellee's automobile 300 feet away, appellant placed his foot on the brake lever but did not apply any pressure thereto. He testified that when appellee's automobile arrived at the center of the highway his automobile was then 150 feet away, still traveling at approximately 50 miles per hour, and he continued to observe appellee's automobile from then on. He also stated "I really put my brakes on when I was 65 or 70 feet away. When I first saw the car at 300 feet, I had my foot ready to go on the brake." After applying his brakes, and when about 50 feet from appellee's automobile, appellant swerved to his right and at the time of the impact the right-hand side of his automobile was 1½ or 2 feet off of the pavement. It was established without contradiction that there were skid marks made by appellant's automobile 50 feet in length, extending southwardly from where his automobile stopped. These marks were in the outside lane for northbound traffic, and veered toward the shoulder of the highway. There was testimony from a professional engineer that under the ex-

isting circumstances, appellant's automobile could have been stopped in 183 feet while traveling at 50 miles per hour and 251 feet at 60 miles per hour.

Before proceeding directly to a discussion of appellant's contention that no submissible case was made under the humanitarian doctrine, we briefly review and paraphrase the holding of the Supreme Court of Missouri in the oft cited case of Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484, with respect to the elements necessary to make a humanitarian case. The essential facts must show that— a) plaintiff was in a position of imminent peril; b) defendant had notice thereof, actual or constructive; c) defendant, after receiving such notice had the present ability to avert the impending injury without undue risk to himself or others; d) that defendant failed to exercise (the highest degree) care to avert the injury; e) and that, by reason thereof, plaintiff was injured. A further point to be made is that "[i]n some instances obliviousness of danger on the part of the plaintiff is necessary to make the situation in which he is placed one of peril." Banks v. Morris & Co., supra, at pages 484–485 of 257 S.W. See also, Lefkowitz v. Kansas City Public Service Co., Mo., 242 S.W.2d 530, 533; and Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694, 699.

With this background in mind, it is apparent that the parties do not differ as to the constitutive elements of the humanitarian doctrine. The trouble arises over the construction to be placed upon the evidence as to when appellee entered into a zone of imminent peril. Appellant's contention is based on the mistaken impression that the evidence conclusively established that appellee was not oblivious to the danger from appellant's approaching automobile; that by reason of that fact, the zone of peril was very narrow and did not come into existence until appellee was so close to the path of appellant's automobile that he could not stop short of that path (7 or 8 feet); that appellant had no duty

to act until appellee was in this situation of imminent peril, and that, thereafter, under the facts present, it was impossible for appellant to do anything to avoid the collision. To support this contention, appellant relies on Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495; McElwee v. Curtiss-Wright Corporation, D.C.E.D.Mo., 70 F.Supp. 97; Cosentino v. Heffelfinger, 360 Mo. 535, 229 S.W.2d 546; Goodson v. Schwandt, 318 Mo. 666, 300 S.W. 795; Underwood v. St. Louis I. M. & S. Ry. Co., 182 Mo.App. 252, 168 S.W. 803; Claridge v. Anzolone, 359 Mo. 65, 220 S.W.2d 33. As true so often, this type of case depends much on the facts, and each of appellant's cases is clearly distinguishable in that by reasons of geography, as in the Underwood case, or sudden acts of pedestrians, jumping into the paths of oncoming vehicles, as in McElwee and Goodson, it was impossible for defendants there to act in time to avert the accident. In Yeaman, Claridge and Cosentino, the courts stressed the fact that plaintiffs were at all times aware of the danger. Admittedly, under our facts, when appellee started his automobile across the highway, he saw appellant's vehicle approaching 700 or 750 feet away. He again observed the other automobile in a glance about 300 feet away—this when the front of appellee's automobile was 2 feet over the center line of the highway. But by undisputed testimony, appellee did not again look for or see appellant's automobile until after the collision. Thus, while logic dictates that appellee was "aware" of the approach of appellant's automobile, there was evidence from which the jury could reasonably have found that from the time appellee's automobile reached a point 2 feet east of the center of the highway, appellant should have known from appearances that appellee was intent on operating his automobile across the two northbound lanes of traffic, and was oblivious to *his danger* from the approach of the other vehicle. The mere fact that appellee saw the northbound automobile approaching does not prevent him from

thereafter obliviously coming into a position of imminent peril of collision with appellant's automobile. It is not obliviousness to the *approach* of appellant's vehicle—it is obliviousness to *danger* therefrom which governs. See Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 196 S.W.2d 1000, 1002, 1003; Nored v. St. Louis Public Service Co., Mo., 319 S.W.2d 608, 611. In the circumstances of record, it was for the jury to say just where and when the imminent peril of collision arose, and whether thereafter appellant could have acted to prevent the same. Caswell v. St. Louis Public Service Co., Mo., 262 S.W. 2d 40; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 583, 305 S.W.2d 423; Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 485; Nored v. St. Louis Public Service Co., supra, 319 S.W.2d 608, 611. Certainly upon a finding of obliviousness, and in view of the other facts, a jury could reasonably have found that from the time appellee started to cross the two northbound lanes, he was in a position of imminent peril.

■ There was likewise evidence affording proof from which the jury could justifiably find that when the situation of imminent peril came into existence, the appellant, by the exercise of the highest degree of care, could have avoided the collision by slackening the speed of his automobile, swerving the same, and by giving a warning of its approach. (The court's instruction submitted these three charges of negligence.) If the jury believed appellee, the appellant was 300 feet away, traveling at a speed of 60 miles per hour, when appellee started across the center line. It is scarcely debatable that this afforded appellant ample time to slacken speed, swerve, and sound a warning. Appellant admitted that he did nothing until he was 65 feet away, when he applied his brakes; that he gave no warning; that he did not swerve to his left, although the uncontradicted testimony was that there was no other traffic from the north to prevent him from doing so. Remembering

that two-thirds of appellee's automobile had completely cleared the highway at the time of collision, it appears that had appellant swerved to the left the accident would have been averted. Under all the circumstances, it is obvious that the trial court properly submitted these facts to the jury. Cf., Caswell v. St. Louis Public Service Co., supra, 262 S.W.2d 40, 46; Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 196 S.W.2d 1000, 1003; Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694, 700.

■ Appellant also assigns as error the giving of the instruction which submitted the "three separate humanitarian doctrine postulates of slacken speed and swerve and sound a warning." The claim is that there was no duty to warn and no evidence to justify submission of all three postulates. We find this contention without merit. It was for the jury to say whether the failure to warn under all the circumstances was an element contributing to appellee's injury. There being evidence that appellee was oblivious to his danger, we cannot say a timely warning would have served no purpose. Cf., Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 196 S.W.2d 1000, 1003. With appellee being able to stop his automobile within 7 to 8 feet, as it was crossing the highway, a jury could reasonably conclude that if appellant had sounded his horn when he was 150 feet away (taking his figures), or 300 feet away (taking appellee's estimate), the appellee could have been able to stop his vehicle before it reached the first, or outside lane for northbound traffic. Further discussion of the remainder of appellant's attack upon the instruction is unnecessary in view of our consideration and treatment of appellant's basic assignment.

We have also considered appellant's contention with respect to alleged error in limiting his right of cross-examination of witnesses, and find no substance therein.

Affirmed.