Josephine CROCKWELL and Robert Crockwell, Plaintiffs-Respondents,

v.

John T. OLDANI, Defendant-Appellant.

No. 32415.

St. Louis Court of Appeals.

Missouri.

Dec. 20, 1966.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 17, 1967.

Heneghan, Roberts & Cole, Robert G. Burridge, St. Louis, for defendant-appellant.

Vincent M. Igoe, St. Louis, for plaintiffs-respondents.

ANDERSON, Judge.

This is a damage suit brought by Robert Crockwell and Josephine Crockwell, husband and wife, against John T. Oldani. The petition in said suit was in three counts. By Count I, Mrs. Crockwell sought damages for personal injuries alleged to have been sustained by her as a result of a collision between a car she was driving and an automobile being driven by defendant. In Count II, Robert Crockwell sought damages for the loss of his wife's companionship, society and consortium, alleged to have been suffered by him as a result of said accident. In Count III, both plaintiffs sought recovery for the damages to the car which resulted from said collision. There was a verdict for Mrs. Crockwell on Count I for $1,000.00; for the husband, Robert Crockwell on Count II for $200.00 and for both plaintiffs on Count III in the sum of $800.-00. From the judgment on said verdicts, defendant has appealed.

The case was submitted solely on failure to slacken speed and swerve under the humanitarian doctrine. Appellant contends that no submissible case was made under

the theory submitted, and that the court erred in sending to the jury room, at the request of the jury, a note explaining plaintiff's testimony as to the directions shown on certain photographs in evidence, then in the possession of the jury. We will refer to the parties as plaintiffs and defendant.

The collision occurred at about 9:45 a.m. October 23, 1962, at the intersection of Althea and Sterling Avenues. Both are public thoroughfares in St. Louis County. Both streets have blacktop paving about 25 feet wide and with drainage ditches on the sides. It was not shown how deep these drainage ditches were, or how far they were from the edge of the pavement. However, plaintiff testified that "[t]hey do park on the sides" of Sterling. Photographs were introduced showing Sterling Avenue at and near the intersection which might have revealed the approximate distance, but defendant-appellant did not lodge these exhibits in this court. There was no curbing on either street at the time of the accident. Sterling Avenue runs east and west. Althea is a north and south street. The streets intersect at right angles. There were no painted lines marking the center of either street. There were no stop or traffic control markers on either street at the intersection, and no traffic control lights. Mrs. Crockwell, prior to and at the time of the collision, was operating a 1959 Ford Galaxie automobile westwardly on Sterling. Defendant was driving a 1962 Chevrolet south on Althea. Title to the Ford Galaxie was in the name of both plaintiffs. The streets were dry at the time. There was a row of trees on the east side of Althea. It does not appear how close to the intersection this row of trees was, the kind of trees they were, or their size. If appellant had lodged the exhibits with this court, we would be better informed as to the matters. However, these trees did not completely shut off the view to the east of one approaching Sterling, for defendant testified, " * * * you could still see a little." There were cars parked on the east side of Althea up to within a half car length of the intersection.

Mrs. Crockwell testified she had been traveling about 20 miles and hour, and as she approached the intersection, reduced the speed of her car to about 15 miles per hour. She then looked to the left and to the right, but did not see anyone approaching the intersection. She then started forward to enter the intersection, at which time she again looked to the right and saw defendant's car approaching the intersection. Defendant's car, at that time, was about three car lengths from the intersection traveling about 25 miles per hour. She saw defendant's car over the tops of cars parked on Althea. She further testified that her car was about a car length from the intersection when she first saw defendant's car, but later, in her testimony, estimated the distance at one and one-half car lengths. When she first saw defendant's car she thereafter applied the brakes on her car as she was entering the intersection. The brakes took hold, but when the front of her car reached the center line of Althea, her car collided with defendant's automobile. She stated that at the time of the impact, her car was almost at a complete stop.

Plaintiff further testified that she watched defendant's car from the time she first saw it until the collision; that after she first observed defendant's car, it "slowed up a little and then it started to go on into the intersection;" that it was in both traffic lanes of Althea and came toward her at an angle; that the force of the collision pushed her car a distance of about three feet; that defendant's car hit her car, pushed it, and then hit it again; that when the cars came to rest they were side by side facing southwest, west of the center line of Althea and "on the wrong side of Sterling;" that the front of her car came to rest west of the center of Althea; and that there was glass in the street after the impact on the west side of Althea and on the north side of Sterling.

The transcript shows the following testimony by Mrs. Crockwell: "Q. At the last split second before the moment of impact how much space was there between the

front of your car and the west side of Althea? A. Almost a whole lane. The Court: Lane of what? A. Road. * * * Q. * * * In terms of the width of a car, how wide would that lane be? A. It would be one car width wide."

After the collision, plaintiff observed skid marks running in a southwardly direction along the west lane of Althea about four feet in length. These stopped about two feet from the point of impact. There were skid marks running in a westwardly direction on Sterling. These were about six feet long and extended up to the point of impact.

On cross-examination, plaintiff testified that in estimating a car length, "I was using my car, I guess, in estimating that. * * * I guess it's maybe eight foot or ten foot long." Plaintiff was then read a part of testimony she had given in a deposition wherein she testified that she guessed she saw the top of defendant's car when it was 20 or 25 feet from the intersection, and asked if that was correct. Her answer was, "Yes, I would say so."

Defendant testified that he approached the intersection at approximately 15 or 20 miles per hour; that he looked left into Sterling when he was about to enter the intersection, but saw nothing; that he could see seven or eight feet into Sterling at the time; that after looking to the left he looked to the right and entered the intersection at a speed of about 15 miles per hour; that he got a slight glimpse of the Crockwell car just before the collision; that he then applied the brakes on his car; that his speed at the moment of impact was no more than fifteen miles per hour; that just before the collision when he got a glimpse of the Crockwell car, he "sort of swung to the right;" that as he entered the intersection, he was traveling "mostly to the right side," and at the time of the impact was more on the right side; that very little of his car was over the center of Althea; that his left front fender was pushed in over the left front tire; that from what he could see it was the right fender of the Crockwell car that was involved.

On cross-examination, he testified that when he first looked to the left he was about 10 feet from the intersection; that there was nothing to obstruct his view east on Sterling at the time; that when he was 10 feet from the intersection, he imagined he could see 7 or 8 feet east on Sterling. Defendant gave the following testimony: "Q. Would there be enough room between the center line of Althea—the imaginary center line—and the west side of Althea for your car, the car you were driving at the time, to have passed? A. Yes, sir, you could."

Defendant contends that the Court erred in failing and refusing to sustain his motion to set aside the verdict and judgment and enter judgment for defendant in accordance with his motion for a directed verdict. In support of this assignment, it is urged that under the evidence presented, a jury could not reasonably find when plaintiff, Josephine Crockwell, entered the zone of imminent peril without resort to speculation and conjecture, and that the evidence conclusively shows that defendant could not slacken and swerve his automobile after she entered the zone of peril.

■■■ The fundamental principles which govern the application of my humanitarian doctrine have been stated many times, and are not in dispute in the instant case. The first and basic fact for its imposition is the position of imminent peril. It must be certain, immediate and impending; and a mere likelihood or bare possibility that a collision will occur is not sufficient to show its existence. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575. Other necessary elements are, notice to defendant, either actual or constructive of plaintiffs' peril, and defendant's ability thereafter to avert the collision with the means at hand without injury to himself and others. Whether these elements are present in a particular case is a jury question where there is evidentiary basis in support of each element from which a jury could reasonably find their existence. In determining wheth-

er such a case was made, the evidence must be viewed in the light most favorable to plaintiff.

■ Also important here is the rule that a plaintiff is not conclusively bound by his or her own estimates of distances or speed. Meier v. Moreland, Mo., 406 S.W. 2d 97; Carlson v. St. Louis Public Service Co., Mo., 358 S.W.2d 795.

■ The zone of peril in this case, and the duty of defendant to take effective action under the humanitarian doctrine submitted could only arise when he saw or by the exercise of the highest degree of care should have seen and realized that Mrs. Crockwell, who was approaching the path of his car, was so close to it that she could not stop before reaching it.

Mrs. Crockwell testified that she first saw defendant's car when her automobile was about one car length or one car length and a half from the intersection. She estimated a car length at 8 or 10 feet, so that we will take it that her estimate of the distance was 12 or 15 feet east of the intersection at the time. She was traveling about 15 miles per hour. When she first saw defendant's car, it was three car lengths north of the intersection, or 24 to 30 feet. Defendant testified that he approached the intersection at a speed of 15 to 20 miles per hour and entered the intersection at 15 miles per hour. He testified that when he got to within 10 feet of the intersection, he looked to his left and could see only 7 or 8 feet into Sterling but saw nothing at the time. However, the jury could have rejected this testimony for according to his own testimony, there was nothing to obstruct his view except a row of trees which did not completely shut off his view, he having testified he could still "see a little;" and since Mrs. Crockwell could see defendant when he was thirty feet from the intersection, a jury could reasonably find that defendant, when at that distance, could have observed plaintiff who was then, according to her testimony 12 to 15 feet east of the intersection. Plaintiff immediately applied the brakes on her car when she first observed defendant and thereafter came to almost a stop when the front of her car reached the center of Althea. Defendant, according to his testimony, looked toward the east when he was 10 feet from the intersection and, failing to see what he could have seen, continued across the intersection at 15 miles an hour without once again looking to his left. Mrs. Crockwell, at the time he said he looked to the left, was within the intersection and was attempting to reduce the speed of her car. Defendant never saw Mrs. Crockwell's car until an instant before the collision when it was too late for him to take any effective action to avoid the collision He admitted that there was enough room between the center line of Althea and the west side of Althea for his car to have passed in front of the Crockwell car.

■ Taking the evidence in the light most favorable to plaintiffs, defendant was thirty feet from the intersection when he could have seen plaintiffs' car about to enter the intersection. A jury could, without speculation or conjecture, reasonably find that Mrs. Crockwell was then in a position of peril, which fact defendant should have realized had he been in the exercise of the highest degree of care. He was then 34 or 35 feet from the point of impact. Traveling at 15 miles per hour, he would cover about 22 feet per second. Allowing three-fourths of a second reaction time, he still had 19 or 20 feet left for the brakes to respond to the pressure on the brake pedal and the wheels to respond to a turn of the steering wheel, which movements would have avoided a collision between the two cars. A jury could reasonably find there was no other traffic to prevent a swerve to the right into Sterling, or for defendant to remain on Althea, swerve to the right, and pass in front of the Crockwell car. In our judgment, plaintiff made a case for the jury, and that a verdict could be returned in plaintiffs' favor without resort to speculation and conjecture.

At the trial, Mrs. Crockwell identified four photographs which were introduced into evidence as plaintiffs' Exhibits A, C, E and F. She testified that Exhibit A was a photograph of Althea showing a view to the south, the direction defendant's car was traveling; that Exhibit C was also a photograph of Althea showing a view southward; that Exhibit E was a photograph of Sterling showing a view westwardly along said street; and that Exhibit F was a photograph of Althea showing a view toward the South. These photographs were then offered in evidence, at which time defendant's counsel stated he had no objection to the offer. These exhibits were given to the jury when they were sent to the jury room to deliberate on their verdict. Apparently, this was with the consent of counsel, for the record shows no objection by either party to it.

Thereafter, the following occurred:

"The Court: Let the record show that at approximately 4:55 P.M. the buzzer in the jury room sounded; the bailiff went to the jury room door, and a member of the jury handed him four photographs, Plaintiffs' Exhibits A, C, E and F, together with a note as follows: 'Please identify directional views and streets on the photographs.'"

The record further shows that the judge inquired of defendant's counsel if he had any objection to the Court's complying with the jury's request contained in said note. Defendant's counsel replied that he did, and then stated his objections in quite some detail, some of which have been preserved and are now urged as grounds for reversal of the judgment. The Court overruled the objection and sent to the jury room the following note:

"In response to the jury's request for an identification of the directional views and streets on the four photographs handed to the bailiff, Mrs. Josephine Crockwell testified, according to the Court's record, that Plaintiffs' Exhibits A, C and F were views of Althea Street looking to the

south, and that Plaintiffs' Exhibit E was a view of Sterling Street looking to the east."

Defendant's counsel then made further objection to the Court's action, and moved for a mistrial, which motion was by the court overruled.

On this appeal, defendant contends that the court's action in complying with the jury's request was reversible error. In support of this assignment, it is urged that its effect was to enable plaintiffs to reopen the case, and clarify their case as to an essential ingredient thereof, to wit, the geography of the scene of the accident, and was a comment on the weight of the evidence and the credibility of Mrs. Crockwell's testimony which was clearly an invasion of the province of the jury.

Assuming, without deciding, that the court erred in its action, we are convinced that such error, if any, did not materially affect the merits of the action. Such being the case, we may not reverse the judgment. See Civil Rule 83.13(b), V.A.M.R.

The judgment is affirmed.

WOLFE, P. J., and RUDDY, J., concur.