Dorothy **CARLSON**, Plaintiff-Appellant,

v.

**T.I.M.E. FREIGHT, INC.** and **Frank M. Jones**, Defendants-Respondents.

No. 57015.

Supreme Court of Missouri,
Division No. 1.

Oct. 8, 1973.

Clyde G. Meise, S. W. Longan, III, Kansas City, for plaintiff-appellant Carlson.

William H. Sanders, David C. Trowbridge, Kansas City, for respondents;

Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, of counsel.

LAURANCE M. HYDE, Special Commissioner.

Action for $50,000 for wrongful death of plaintiff's husband. Defendants' motion for a directed verdict was sustained by the court at the close of plaintiff's evidence and plaintiff has appealed from the judgment entered for defendants. Notice of appeal was filed July 1, 1971. Plaintiff claims to have made a case under the humanitarian doctrine. We affirm the judgment for defendants.

Plaintiff's husband was killed in a collision between his car going east and defendant T.I.M.E.'s tractor trailer which was going west. The collision was about 10:50 a. m., October 23, 1968, on Missouri Highway 7 which had pavement 18 feet wide with four foot shoulders on each side, from which steep embankments dropped off on each side into a swampy area. It had been drizzling, the pavement was damp and the tractor trailer headlights were on. Plaintiff's husband, hereinafter referred to as Carlson, was driving east behind a pick-up truck driven by Claude Jones. They were approaching a curved bridge 400 feet long when Carlson started to pass Jones. Because of the curve in the bridge defendant's driver (Frank Jones) said: "You've got to be half way through it [the bridge] * * * before you can get your sight straightaway." The said tractor trailer unit with its load weighed about 60,000 pounds. Plaintiff had testimony of a police officer as to stopping distances based on study about stopping distances and tests with a two-ton truck. However, he had not studied stopping "big tractor trailer over-the-road units carrying big over-the-road loads," and his testimony did not include that situation, which is the situation involved in this case. Defendant's driver said it would require between 300 and 400 feet to stop the tractor trailer.

The speed of both trucks was 50 to 55 miles per hour. Approaching the bridge Carlson started to pass the pickup truck and continued his attempt to pass until the hood of his car was even with the door of the pickup. Claude Jones said he did not know where the tractor trailer was in relation to the curved bridge when Carlson started to pass him. He had said in a deposition that the tractor trailer was on the bridge when Carlson's car was beside him. However, as to where the tractor trailer was when Carlson's car was by the side of his pickup truck, Claude Jones' testimony was that he first saw it on the bridge but that was "a little ahead" of when Carlson's car was at the rear of his truck passing. He further testified: "Q But when we get down to it, you just really don't know; isn't that right? The witness: That's right." He further testified:

"Q But you are, as I understand your testimony sure of one thing: that when the car pulled out to pass—when it began to—when it first began to pull out to pass, you immediately realized that truck was so close that there was going to be an accident?

"A I sure did.

"Q And so, when the car began to pull out to pass, and you knew right then there was going to be an accident because the truck was so close there had to be an accident, you didn't make any accurate observation at all as to where the truck was except that it was so close that there had to be an accident; isn't that right?

"A That's—yes, that's it."

Claude Jones further said that when he first saw the tractor trailer it was on the bridge but that was a little before Carlson was at the rear of his truck starting to pass. He was not sure where the tractor trailer truck was when Carlson began to slow up or drop back because he was trying to watch what he was going to do. The collision was close to the rear of his pickup truck in the westbound lane. After the collision Claude Jones stopped his pickup truck at the west end of the bridge and radioed for the Highway Patrol. He then backed his truck to the scene of the collision which he estimated was 100 yards from the bridge. The patrolman who came found skid marks on the pavement about 20 feet long made by the tractor trailer and gouge marks in the pavement about 3 feet north of the center line of the pavement. He did not measure the distance of these marks from the bridge. He said he could see approximately to the center of the bridge from these gouge marks.

In Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484 (banc 1924), this court held the constitutive facts of a cause of action under the humanitarian rule are: "(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured." The defect in plaintiff's case herein is the failure to prove fact (3). The evidence does not show where the tractor trailer was when Carlson's car came alongside the pickup truck driven by Claude Jones. He had seen the tractor trailer on the bridge a little before Carlson started to pass him. He stated he did not know where the tractor trailer was when Carlson's car came from behind his pickup and up to the side of his car. He explained he realized there would be a collision because the tractor trailer was so close and his attention and efforts were to keeping his pickup out of the way of it. The collision occurred right close to the rear of his pickup and he saw it in his rearview mirror. The driver of the tractor trailer said in a deposition that he had just come out of the bridge when he first saw Carlson's car. He also said he did not have any judgment as to how far west of

the west end of the bridge he was when he saw Carlson's car come alongside the pickup.

This is not a case where it was possible to avoid a collision by swerving. The tractor trailer was eight feet wide and the pavement lanes were only nine feet. The shoulders were only four feet with steep embankments dropping off on each side. The collision could only be avoided by a complete stop of the tractor trailer or by slowing soon enough to allow Carlson's car time to drop back from the side of the pickup and move over behind it. The collision occurred at the rear of the pickup and the tractor trailer's wheels had made marks 20 feet long on the pavement from application of its brakes. The trouble with plaintiff's case is that there is no substantial evidence of the distance between the tractor trailer and Carlson's car at the time Carlson left his eastbound lane and moved into the tractor trailer's westbound lane alongside the pickup truck.

Plaintiff relies on Crook v. Dooley, 389 S.W.2d 809 (Mo.1965); Hayes v. Coca-Cola Bottling Co., 269 S.W.2d 639 (Mo. 1954); Crockwell v. Oldani, 410 S.W.2d 701 (Mo.App.1966). In Crook, defendant ran into plaintiff's tractor from behind, both vehicles going in the same direction. The distance defendant was from plaintiff when he first saw him ahead was fixed by defendant's own testimony in his deposition and stopping distances at all speeds indicated by the evidence were shown to be within that distance. In Hayes, where defendant's truck struck a streetcar coming around a curve, defendant's own testimony showed ability to stop the truck (traveling uphill) in 45 feet including reaction time when the truck was 60 feet from the track. We said the jury could reasonably believe "that the truck driver (knowing the car was turning) * * * tried to beat it through the intersection." In Crockwell, an intersection collision, the court held it was reasonable to find there was no other traffic to prevent a swerve to the right into another street or to remain on the

street he was on, swerve to the right and pass in front of plaintiff's car. As we said in Paydon v. Globus, 262 S.W.2d 601 (Mo. banc 1953): "To allow a recovery under the record in this case, we would be forced to accept facts that are based upon mere speculation and conjecture. This we cannot do."

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.